1  Craig A. Horowitz, State Bar No. 125159
2  Wayne D. Clayton, State Bar No. 137564
   **HOROWITZ & CLAYTON**
3  A Professional Corporation
   300 Corporate Pointe, Suite 355
4  Culver City, California 90230
   Telephone: (310) 442-1122
5  Facsimile: (310) 442-2612

6
   Attorneys for Defendant,
7  AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF
   NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC
8

9                    **UNITED STATES DISTRICT COURT**

10                  **NORTHERN DISTRICT OF CALIFORNIA**

11

12

13  MARK SABLOWSKY and SUMNER JOHNSON,)   **Case No. 23-cv-02555**
    on behalf of themselves and others similarly situated,)
14                                          )  [Assigned to Hon. Alex G Tse, Dept. A]
                                            )
15        Plaintiff,                        )  **DEFENDANTS' NOTICE OF**
                                            )  **MOTION AND MOTION FOR ISSUE**
16                                          )  **AND MONETARY SANCTIONS FOR**
                                            )  **UNLAWFUL SOLICITATION OF**
17        vs.                               )  **FLSA PUTATIVE BRANCH**
                                            )  **MANAGER COLLECTIVE ACTION**
18  AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR)  **MEMBERS BY PLAINTIFFS'**
19  SYSTEM OF NEW YORK CITY, INC., and AUTO-)  **COUNSEL; MEMORANDUM OF**
    CHLOR SYSTEM OF THE MID SOUTH, LLC;  )  **POINTS & AUTHORITIES IN**
20                                          )  **SUPPORT THEREOF;**
          Defendants.                       )  **DECLARATIONS OF ED IVY AND**
21                                          )  **CRAIG A. HOROWITZ**
                                            )
22                                          )
                                            )  Time: 10:00 a.m.
23                                          )  Date: July 28, 2023
                                            )  Dept.: A
24  _____)

25        PLEASE TAKE NOTICE that on July 28, 2023, at 10:00 a.m. in Department A of the above

26
    entitled court, Defendants Auto-Chlor System, LLC, Auto-Chlor System of New York City, Inc. and
27

28  _____
    **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS**
    **FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE**
    **ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN**
    **SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ**
    **- i -**

Auto-Chlor System of the Mid South, LLC. hereby move for issue and monetary sanctions against Plaintiffs and their counsel, Wynne Law Firm and Pardell, Kruzyk & Giribaldo, PLLC, jointly and severally, for unlawful solicitation of FLSA putative collective action plaintiffs. As discussed within, Plaintiffs' California counsel Edward J. Wynne mailed an "Auto-Chlor Branch Manager Wage Claim Newsletter" soliciting Branch Managers to participate in a collective action to the corporate office in Mountain View and all other branches of different Auto-Chlor entities in California. (Ivy Decl. ¶ 3, Exh. 1.) (None of the Defendants in this lawsuit operate branches in California.) Plaintiffs' Florida pro hac vice counsel, the Pardell, Kruzyk & Giribaldo, PLLC firm, is similarly contacting branch managers by LinkedIn at the very least soliciting their participation in the collective action. (Ivy Decl. ¶ 4, Exh. 2.)

This motion is brought pursuant to the court's inherent duty and broad authority to exercise control over the collective actions and to govern conduct of counsel and parties in collective actions. See Gulf Oil Co. v. Bernard, 452 U.S. 89, 100-101 (1981)("Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties."); Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989) (Holding that district courts have the authority to govern the conduct of counsel and parties in collective actions). The motion is also brought under Hamm v. TBC Corp., 345 Fed. Appx. 406 (11th Cir. 2009) which is persuasive authority and attached hereto. In Hamm, the Eleventh Circuit affirmed the District Court's order prohibiting Plaintiffs' counsel from representing anyone other than named collective action members in an FLSA collective action when a staff member, non-attorney contacted putative collective action members on the ground that such solicitation tainted the certification process and potential opt in notice procedure. The

Eleventh Circuit also affirmed the District Court's award of monetary sanctions to reimburse Defendants for the attorneys fees expended in bringing and prosecuting the sanctions motion. Defendants here seek monetary sanctions of $2,500.00 as the reasonable fees incurred in bringing this motion. (Horowitz Decl. ¶ 4.)

This motion is based on this Notice, the Memorandum of Points and Authorities, Declarations of Ed Ivy and Craig A. Horowitz, the Complaint and other pleadings and on such arguments as the Court may permit.

DATED: June 20, 2023

HOROWITZ & CLAYTON

BY: _____
CRAIG A. HOROWITZ
Attorneys for Defendants,
AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC

1

## **TABLE OF CONTENTS**

2

3  **MEMORANDUM OF POINTS & AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4      **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5      **FACTUAL AND PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . 4

6
    **LEGAL ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

7
          **I.**    **PLAINTIFF COUNSEL WYNNE'S "NEWSLETTER" MAILED TO**
8                   **CALIFORNIA BRANCH MANAGERS AND PRO HAC VICE**
9                   **COUNSEL'S LINKEDIN MESSAGES TO PARTICULAR BRANCH**
                 **MANAGERS ARE UNLAWFUL SOLICITATION WARRANTING**
10                  **ISSUE AND MONETARY SANCTIONS TO MAINTAIN THE**
11                  **COURT'S REQUIRED SUPERVISION OF THE COLLECTIVE**
                 **ACTION PROCESS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

12
    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**STATUES**

29 U.S.C. § 216(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**CASES**

Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Hamm v. TBC Corp., 345 Fed. Appx. 406 (11th Cir. 2009)  . . . . . . . . . . . . . . . .   ii, 3, 4, 8, 9, 10

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989)  . . . . . . . . . . . . . . . . . . . . . .   ii, 1, 2, 8

**RULES**

California Rules Professional Conduct 7.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1,  7, 8, 10

Florida Rule of Professional Conduct 4-7.18(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Civil Procedure Rule 11(c)(2)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1

2

## MEMORANDUM OF POINTS & AUTHORITIES

## INTRODUCTION

3

4

5

6

7

8

9

10

11

In this purported FLSA collective action case, brought by two Plaintiffs, Mark Sablowsky and Sumner Johnson, Plaintiffs' California counsel and pro hac vice Florida counsel have solicited in writing Branch Managers of various separate Auto-Chlor legal entities (both parties and non parties to this case). Not content to allow the certification process and potential opt in notice procedure to proceed as legally justified under the governing provisions of 29 U.S.C. § 216(b), Plaintiffs' counsel here have tainted, at the very least, this procedure through direct mail and personal LinkedIn contact. (Ivy Decl. ¶¶ 3-4, Exhs. 1 and 2.)

12

13

14

15

16

17

18

19

20

21

22

23

24

However, both California and Florida law prohibit such solicitation. See Cal. Rules Prof. Cond. 7.3; Florida Rule of Prof. Cond. 4-7.18(b). Likewise, this Court's Local Rules require that attorneys practicing within the District "[b]e familiar and comply with the standards of professional conduct required of members of the State Bar of California." Rule 11-4, N.D. Cal Local Rules. With respect to this case as a putative collective action under the FLSA, the United States Supreme Court has made clear that a district court has a managerial responsibility to oversee the process by which putative class members are given notice of, and allowed to join, a collective action. See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989). In Sperling, the Court emphasized the necessity for "scrupulous" attention to the contents of any notice communications with the putative collective action class, and stressed that the court's notice is very different from a solicitation to join a lawsuit:

25

26

27

> **"Court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims. In exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts**

28

1

**must take care to avoid even the appearance of judicial endorsement of the merits of the action**. Id. at 174 (emphasis added).

2

3    The Court in <u>Sperling</u> further directed:

4
5
6

"Because trial court involvement in the notice process [in collective action cases] is inevitable in cases with numerous plaintiff where written consent is required by statute, it lies within the discretion of he district court to begin its involvement early . . . .." <u>Id</u>. at 171.

7
8
9
10
11

The solicitation by private attorneys for "branch managers" of any Auto-Chlor entity to join this putative FLSA disrupts well recognized FLSA collective action notice procedure and usurps this Court's ability (and responsibility) to supervise that process (if the case is eventually conditionally certified).

12
13
14
15
16
17
18
19
20

Still worse, beyond taking the notice procedure away from established court practice under the FLSA, the attorneys' solicitations here are misleading. With respect to the solicitation sent by Plaintiffs' California counsel Edward Wynne and Wynne Law Firm, it is entitled "**Auto-Chlor Branch Manager Wage Claim Newsletter**," <u>not</u> "Attorney Advertisement." (Exh. 1.) The document is deceptive on its face purporting to be an objective "May 2023 Newsletter" rather than an attorney advertisement seeking clients for a collective action lawsuit filed against other Auto-Chlor entities.[1] (Exh. 1.) Counsel's solicitation was not just a letter stating "you may have rights and contact us if you wish to discuss potential representation." (Exh. 1.)

21
22
23

Similarly, the written solicitation to a branch manager through the social media company by attorney Bryan Giribaldo, a partner at the Florida law firm of Plaintiffs' Florida pro hac vice counsel

24

25
26
27

[1] While the envelope in which the solicitation was enclosed includes the notation ""ATTORNEY ADVERTISING," the substantive document does not. (Exh. 1, 1-3.) Being delivered to a business, the particular branch manager may not even see the envelope but only the mailed solicitation itself.

28

1   Logan Pardell, is misleading on its face. (Exh. 2.) Mr. Pardell's partner states in the solicitation,

2   "Since my last message, our firm has been retained by former Auto-Chlor System ('Auto-Chlor')

3
    Branch Managers who have filed a collective action lawsuit against Auto-Chlor . . .." (Exh. 2)
4
5   suggesting that the firm represents and has filed a collective action on behalf of a substantial group

6   of branch managers when in fact it has filed on behalf of two individuals, one of whose statute of

7   limitations has run.

8       In terms of the appropriate handling of the impermissible and unlawful solicitations, the
9
    Court here is guided by persuasive Eleventh Circuit authority, Hamm v. TBC Corp., 345 Fed. Appx.
10
11  406 (11th Cir. 2009). In Hamm, the Court of Appeal affirmed the district court's sanctioning of the

12  firm which improperly solicited employees outside the court supervised collective action process.

13   In Hamm, an administrative assistant of Plaintiffs' lawyer contacted merely three of Defendant's

14  employees. The Magistrate Judge granted sanctions, including limiting representation to only the

15  collective action plaintiffs[2] and individuals  who worked directly with Plaintiffs and also granted
16
17  monetary sanctions. Id. at 409. The District Court Judge concurred, and the Eleventh Circuit

18  unanimously affirmed. Id.at 411.

19      Here, the intrusion into the potential opt in process is far worse. Two separate law firms

20  engaged in written solicitation. (Ivy Decl. ¶¶ 3-4, Exhs. 1 and 2.) The written solicitation sent by

21  California attorney Edward J. Wynne was mailed to all branches of three separate Auto-Chlor legal
22
    entities in California, (16 branches) not just to three employees. The widespread nature of the
23
24  solicitation mailing far exceeds what occurred in Hamm. The solicitation orchestrated by pro hac

25

26      [2] Here, as this matter only involves branch managers, the plaintiffs, both former employees,
    did not work with any other branch managers.
27

28  **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS
    FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE
    ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN
    SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ**
    - 3 -

vice counsel Pardell, Kruzyk & Giribaldo, PLLC were sent, at they very least, through direct LinkedIn contact. These solicitation efforts were not done by a staff member, **it was conducted by the attorneys of record in this case.**

This Court should not countenance this blatant effort to subvert an orderly certification and potential opt in process. Defendants respectfully request that the Court limit Plaintiffs' counsel to representing the two named Plaintiffs only, and to pay monetary sanctions in the amount of $2,500. (Horowitz Decl. ¶ 4.)

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Auto-Chlor System, LLC is a limited liability company in Tennessee which manufactures commercial dishwashers for restaurants. (Ivy Decl. ¶ 3.) Auto-Chlor System, LLC does not operate through branches and does not employ any branch managers. Auto-Chlor System, LLC does not employ either of the named plaintiffs. Defendant Auto-Chlor System of New York City, Inc. is engaged in the business of leasing and servicing commercial dishwashers to restaurants and other institutions through branches in the New York, New Jersey and Pennsylvania.  E a c h branch has a branch manager.  Plaintiff Mark Sablowsky was employed by Auto-Chlor System of New York City, Inc. as the branch manager of its Levittown, Pennsylvania branch. Defendant Auto-Chlor System of the Mid South, LLC is also in the business of leasing and servicing commercial dishwashers to restaurants and operates through branches in the mid west and south.  Defendant Auto-Chlor System of the Mid South, LLC employed plaintiff Sumner Johnson as the branch manager of its Des Moines, Iowa branch.[3]

_____

[3]The district court's order in Hamm v. TBC Corp., 597 F. Supp. 2d 1338 (S.D. Fla.), aff'd, 345 F. App'x 406 (11th Cir. 2009), cites the statistic that "according to the Administrative Office of the United States Courts, for the past five years the Southern District of Florida has averaged 28.7%

In late April, early May 2023, before this lawsuit was filed on May 24, 2023, Plaintiffs' California counsel Edward J. Wynne, of Wynne Law Firm, mailed to branch managers 16 branches of Auto-Chlor entities in California a two page solicitation, entitled "Auto-Chlor Branch Manager Wage Claim Newsletter." (Exh. 1.) The documents starts with a telling typo, "This office is investing [sic] a claim on behalf of Auto-Chlor Branch Managers." Viewing the document in its entirety demonstrates that the purpose of the mailing to individual branch managers is to recruit plaintiffs for this collective action lawsuit for the attorneys pecuniary gain. (Exh. 1.) The solicitation does not mention this collective action lawsuit under the FLSA and instead claims to set forth information about California law governing overtime, meal breaks and rest breaks and is therefore deceptive as to this lawsuit brought under the FLSA. For example, the solicitation states that claims for overtime can go back "[f]our years from the date the complaint is filed," rather than the two year statute of limitations under the FLSA. With respect to the solicitation being for the attorneys' pecuniary interest, the document is express:

> "*DO I HAVE TO PAY ATTORNEY FEES?*
> No. In class actions the individual class members are not responsible for attorney fees. . . . All fees and costs may be taken out of the common fund generated by the settlement or judgment of the case. In class actions, the judge determines the amount of fees the attorneys will recover and must also approve the costs." (Exh. 1 at 1.)

The solicitation ends with the statement: "**You may contact us confidentially to discuss your legal rights. Edward J. Wynne Wynne Law Firm**." (Exh. 1 at 2, emphasis in original .) Although the

of all FLSA cases filed in the United States." Id. at 1340. This is the district in which Plaintiffs' lead, pro hac vice Florida counsel is located (Boca Raton). With only two plaintiffs, one formerly employed in Pennsylvania and the other formerly employed in Iowa, this case does not belong in the Northern District of California.

1
2
3
4
5

envelope containing the solicitation includes the language "Attorney Advertising," nowhere in the actual two page solicitation does counsel inform the branch manager recipient that the document is an attorney advertisement solicitation. (Exh. 1 at 1-3.) Defendants do not operate any branches in California or otherwise employ any branch managers in California.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

In addition, Plaintiffs' counsel Logan Pardell's Boca Raton, Florida's firm, Pardell, Kruzyk & Giribaldo, PLLC also solicited Auto-Chlor branch managers outside of the formal FLSA collective action notice process to join this lawsuit. (Exh. 2.) Specifically, name partner Bryan Giribaldo contacted branch manager Marcus Vanderpool, through the social media company LinkedIn. (Ivy Decl. ¶ 4, Exh. 2.) Following the May 24, 2023 filing of this lawsuit, Pardell's partner Giribaldo wrote to the current Auto-Chlor branch manager stating: "Since my last message, our firm has been retained by former Auto-Chlor System ("Auto-Chlor") Branch Managers who have filed a collective action lawuit against Augo-Chlor in which they claim that they and other BMS nationwide were illegally denied overtime pay for hours worked over 40 in a week. I am writing to inquire if you also experienced the following . . .." (Exh. 2.) The solicitation is deceptive in its statement "our firm has been retained by former Auto-Chlor System . . . Branch Managers who have filed a collective action lawsuit" in that it implies that the firm has been retained by a substantial group of branch managers, not two isolated branch managers from two separate Auto-Chlor companies three quarters of the continent away from each other. The solicitation would have the receiving branch manager believe that a large group of branch managers from a single company are suing the particular branch manager's employer.

25
26
27

With respect to the recipients of this LinkedIn written solicitation, Pardel Kruzyk & Giribaldo partner Giribaldo states: " (Exh. 2 at 1.) After searching through LinkedIn, we only learned your

28

name, contact information, and profession."  On its face, it appears that the Pardel Kruzyk & Giribaldo firm sent the LinkedIn message to all branch managers it could find employed by any Auto-Chlor entity.

## LEGAL ARGUMENT

I.   **PLAINTIFF COUNSEL WYNNE'S "NEWSLETTER" MAILED TO CALIFORNIA BRANCH MANAGERS AND PRO HAC VICE COUNSEL'S LINKEDIN MESSAGES TO PARTICULAR BRANCH MANAGERS ARE UNLAWFUL SOLICITATION WARRANTING ISSUE AND MONETARY SANCTIONS TO MAINTAIN THE COURT'S REQUIRED SUPERVISION OF THE COLLECTIVE ACTION PROCESS.**

California law is express in its prohibition of attorneys from soliciting clients for the pecuniary gain of the attorney.  See Cal. Rules Prof. Cond. 7.3. Rule 7.3(e) defines solicitation;

> "As used in this rule, the terms 'solicitation' and 'solicit' refer to an oral or written targeted communication initiated by or on behalf of the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services."

Rule 7.3(b)(2) further prohibits written solicitations when  "the solicitation is transmitted in any manner which involves intrusion, coercion, duress or harassment."  Further, Rule 7.3(c) requires:

> "Every written, recorded or electronic communication from a lawyer soliciting proessional employment from any person known to be in need of legal services in a particular matter shall include the word "Advertisement" or words of similar import on the outside envelope, if any, **and at the beginning and ending of any recorded or electronic communication . . . .**"

The "WYNNE LAW FIRM AUTO-CHLOR BRANCH MANAGER WAGE CLAIM NEWSLETTER" (Exh. 1) amply satisfies Rule 7.3's definition of solicitation. The Wynne document was mailed to specific, individual, targets, the "Branch Manager" at particular Auto-Chlor entity branches in California. (Ivy Decl. ¶ 3.) The solicitation does not include the word "Advertisement" at the beginning or end of the substantive communication, but only on the envelope. (Exh. 1 at 1-3.)

1   The document is deceptive on its face purporting to be an objective "May 2023 Newsletter"

2   rather than an attorney advertisement seeking clients for a collective action lawsuit filed against other

3
    Auto-Chlor entities.[4] (Exh. 1.)  Counsel's solicitation was not just a letter stating "you may have
4

5   rights and contact us if you wish to discuss potential representation." (Exh. 1.)  The document  is

6   deceptive and intrusive in being sent to individual branch managers presenting itself as a neutral

7   factual communication, "**Auto-Chlor Branch Manager Wage Claim Newsletter**," not "Attorney

8   Advertisement." (Exh. 1.)  Being sent to the branch office, the mailing well would be opened by

9
    other staff than the branch manager who well may not see the "Attorney Advertising" on the external
10

11  envelope.  The document purports to state California wage and hour law, even though this lawsuit

12  is brought under the FLSA.  As noted, it deceptively states a four year statute of limitations when

13  the statute under the FLSA is two years.  (Exh. 1 at 2.)

14      This solicitation is thus unlawful not just in its violation of California Rule of Professional

15  Conduct 7.3 but also  Rule 11-4 of this Court's Local Rules.  In addition to being unlawful, the

16
    solicitation to "branch managers" of any Auto-Chlor entity to join this putative FLSA disrupts the
17

18  FLSA collective action notice under Section 216(b).  See Hoffman-La Roche Inc. v. Sperling, 493

19  U.S. at  169, 174. Given the court's responsibility for supervising communications with putative

20  collective action plaintiffs and the opt-in process, sanctions for the solicitations are not only

21  appropriate but necessary.  See  Hamm v. TBC Corp., 345 Fed. Appx. 406 (11th Cir. 2009).  In

22
    Hamm, the Court of Appeal affirmed the district court's sanctioning of the firm which improperly
23

24

25      [4]While the envelope in which the solicitation was enclosed includes the notation

26  ""ATTORNEY ADVERTISING," the substantive document does not.  (Exh. 1, 1-3.)  Being
    delivered to a business, the particular branch manager may not even see the envelope but only the
27  mailed solicitation itself.

28

1    solicited employees outside the court supervised collective action process by limiting the soliciting

2    firm's representation of plaintiffs to only those plaintiffs who worked with the initial named

3    plaintiffs. Id. at 410-411. In affirming this sanction, the Court of Appeals specifically analyzed the

4

5    balanced and reasonable nature of the limits on representation:

6    "The named plaintiffs in this action are from Florida, Georgia, North Carolina, and
     Pennsylvania. There was no evidence before the magistrate judge as to how the opt-in
7    plaintiffs, which included individuals from Texas, Louisiana, Alabama, Ohio,
     Maryland, Missouri, Massachusetts, and Illinois, learned about the suit and selected
8    SLG as counsel. Under these circumstances, it was impossible for the magistrate
     judge to know which, if any, of these clients had also been solicited by SLG. Thus,
9    the magistrate judge recommended narrowly tailored sanctions to permit SLG to
10   continue to represent the named plaintiffs and co-workers of the named plaintiffs
     (presumably because they most likely learned about SLG and the lawsuit from *411
11   the named plaintiffs), but prohibited SLG from representing opt-in plaintiffs from
     other stores. These were reasonable and limited sanctions that balanced the danger
12   that current and future opt-in clients were impermissibly solicited against SLG's
13   interest in representing lawfully-obtained clients." Id.

14   Here, the requested sanction is even more reasonable insofar as there are only two current Plaintiffs,

15   one from Pennsylvania and one from Iowa. For Plaintiffs' current counsel to represent other

16   Plaintiffs from far and wide solicitations would only reward unlawful solicitation and not serve the

17

18   interests of justice.

19   So too with the modest $2,500 monetary sanctions sought here. In Hamm, the Court of

20   Appeals reasoned that such unlawful solicitation conduct violates the requirements of Rule 11(c)(2)

21   of the Federal Rules of Civil Procedure and monetary sanctions are therefore appropriate. Id at 411.

22   To compound the damage, pro hac vice counsel have also engaged in unlawful written

23   solicitation. As described above and set forth fully in Exhibit 2, pro hac vice counsel Pardell's

24

25   partner Bryan Giribaldo is contacting current and former branch managers from multiple Auto-Chlor

26   entities expressly seeking to have them join this "collective action lawsuit against Auto-Chlor."

27

28   **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS
     FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE
     ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN
     SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ**

- 9 -

1  (Exh. 2 at 1.) Although the Pardell, Kruzyk & Giribaldo firm represents only two Plaintiffs in this

2  action (one in Pennsylvania and the other in Iowa), pro hac vice counsel claim to represent "Branch

3  Managers" broadly "nationwide." Counsel also erroneously states that "you may be eligible to join

4

5  the lawsuit and claim unpaid overtime wages for the past 3 years, plus an additional equal amount

6  of damages" even though Plaintiffs have alleged no facts demonstrating any purported wilfulness.

7  These solicitations by the Wynne and Pardell[5] firms are even more egregious than those in

8  Hamm which both the district court and the Court of Appeals found disturbing, unlawful and

9  warranting both issue and monetary sanctions. In Hamm, it was just an administrative assistant who

10

11  did the soliciting of clients. Hamm, 345 F. App'x at 408. Here, we have partners in the law firms

12  which are counsel of record to Plaintiffs in this action actively soliciting clients to join a particular

13  lawsuit outside the confines of the supervision of the court in this FLSA collective action. In order

14  to restore the integrity of this proceeding, it is essential that this unlawful solicitation be stopped and

15  counsel made to remedy the situation as much as possible.

16
## CONCLUSION
17

18  In Hamm, the Court of Appeals affirmed all the sanctions recommended by the Magistrate

19  Judge and adopted by the District Court, specifically:

20  "1) **that Shavitz Law Group be barred from representing any individual,
   including any current opt-in plaintiff, who did not work with any of the named**
21  **plaintiffs in this action ...;**

22
   2) that Shavitz Law Group be barred from collecting any fees or costs for work
23

24  [5]This Court granted the application of Logan Pardell, Pardell, Kruzyk & Giribaldo, PLLC,
25  to practice before the Northern District in this case on a pro hac vice basis. It should therefore be
   bound to comply with Northern District Local Rule 11-4(a)(4) (requiring counsel to comply with the
26  California Rules of Professional Conduct) and California Rules of Professional Conduct 7.3 and not
27  solicit clients.

28  **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS
   FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE
   ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN
   SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ**
   - 10 -

performed in representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action ...;

3) that Shavitz Law Group be ordered to formulate and implement a formal written policy on solicitation to inform and govern the conduct of all SLG attorney and non-attorney staff;

4) that a copy of this Report and Recommendation and any Order adopting it be forwarded to the Florida Bar for possible future action; and

5) that Shavitz Law Group be ordered to reimburse Defendants for all reasonable fees and costs incurred in bringing and prosecuting Defendants' Motion for Sanctions." 345 F. App'x at 409 (Emphasis supplied.)

In order for this collective action to proceed as contemplated by Section 216(b) with the proper supervision of contact of potential plaintiffs by this Court, Defendants respectfully submit that the motion should be granted in its entirety, counsel limited to representing the two existing named plaintiffs, be barred from any further solicitation and be ordered to reimburse Defendants $2,500 in reasonable attorneys fees.

DATED: June 20, 2023                    HOROWITZ & CLAYTON


                                        BY: _____
                                             CRAIG A. HOROWITZ
                                        Attorneys for Defendants,
                                        AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR
                                        SYSTEM OF NEW YORK CITY, INC., and
                                        AUTO-CHLOR SYSTEM OF THE MID SOUTH,
                                        LLC

1

## DECLARATION OF ED IVY

2

I, Ed Ivy, declare as follows:

3

4

1.      If called as a witness in this action, I would testify to the following facts set forth

5

below in this declaration. I have personal knowledge of these facts.

6

2.      I am President of each of the three separate legal entities named in this lawsuit.

7

3.      I received by mail in the corporate office in Mountain View a letter sent to Branch

8

Managers. The corporate headquarters does administrative work only and has no branch managers

9

supervising branches that install and service commercial dishwashers to restaurants and other

10

customers. Auto-Chlor System, LLC, a manufacturing plant in Memphis, Tennessee sued in this

11

12

case, likewise has no branch managers. I determined personally that the letter attached hereto as

13

Exhibit 1 was mailed to every branch of different Auto-Chlor entities in California (which are not

14

parties to this lawsuit), totaling 16 branches.

15

4.      I personally learned that Branch Managers elsewhere were contacted through

16

LinkedIn. A true copy of one example is attached as Exhibit 2.

17

18

I declare under the penalty of perjury under the laws of the United States of America that

19

the foregoing is true and correct.

20

Executed this /5 th day of June, 2023, at Mountain View, California.

21

22

23



ED IVY

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS
FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE
ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ

- 12 -

1

## DECLARATION OF CRAIG A. HOROWITZ

2

I, Craig A. Horowitz, declare as follows:

3

4

1.    If called as a witness in this action, I would testify to the following facts set forth below in this declaration. I have personal knowledge of these facts.

5

6

2.    I am a member of the law firm of Horowitz & Clayton, and I am one of the attorneys

7 principally responsible for the representation of Defendants Auto-Chlor System, LLC, Auto-Chlor

8 System of New York City, Inc. and Auto-Chlor System of the Mid South, LLC ("Defendants") in

9 this case.

10

3.    I attach a copy of Hamm v. TBC Corp., 345 Fed. Appx. 406 (11th Cir. 2009) as

11

12 Exhibit 3.

13

4.    Our firm's normal hourly rate is $595. However, as we have represented various

14 Auto-Chlor legal entities for 30 years, they receive a steeply discounted rate of $250 per hour. I

15 spent, along with my partner Wayne D. Clayton, in excess of 7 hours researching, gathering evidence

16 for and preparing this motion. I anticipate 2 hours on reply and an hour attending the hearing.

17

18 Sanctions in the amount of $2,500 are therefore respectfully requested.

19

I declare under the penalty of perjury under the laws of the United States of America that the

20 foregoing is true and correct.

21

Executed this $2^o$ th day of June, 2023, at Culver City, California.

22

23

Craig A. Horowitz

24

CRAIG A. HOROWITZ

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS
FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE
ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN
SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ

- 13 -

**EXHIBIT 1**

# WYNNE LAW FIRM

## AUTO-CHLOR BRANCH MANAGER WAGE CLAIM NEWSLETTER

### MAY 2023 NEWSLETTER

### INVESTIGATION ON BEHALF OF AUTO-CHLOR BRANCH MANAGERS WHO MAY BE OWED BACK WAGES

This office is investing a claim on behalf of Auto-Chlor Branch Managers.

We have reason to believe that Auto-Chlor Branch Managers are not being paid all the wages they are owed.

Our investigation to-date has revealed the following facts: (1) Branch Managers are classified as exempt from overtime, paid a salary, and are paid the same amount every week regardless of hours worked, (2) Branch Managers work considerable number of hours above 40 in a week, and (3) Branch Managers spend most of their time engaged in service checks, installations, and routine clerical duties.

Based on these facts, we believe that Branch Managers may be owed misclassified as salaried-exempt and may be owed overtime compensation for all hours worked over 8 in a day or 40 in a week.

If you are a current or former Branch Manager of Auto-Chlor in California, we would like to speak to you about your experience at Auto-Chlor. Any communications with Wynne Law Firm are strictly confidential.

### SALARIED EMPLOYEES MAY BE ENTITLED TO OVERTIME

There is a common misconception that salaried employees (e.g., Branch Managers) cannot receive overtime. Many employees are often told they are "exempt" from overtime because they are salaried and/or because they have the title "manager." This is not always correct. California law states that, regardless of your title and whether you are salaried or hourly, you may be entitled to overtime if you spend 50% or more of your time engaged in non-exempt activities. If you spend more than 50% of your time engaged in non-exempt activities, you might be entitled to overtime even though you are paid a salary and have a "manager" title. How can you tell? Take this short test:

### OVERTIME TEST

A. Are you paid a salary?

B. Do you work more than 40 hours per week?

C. Do you spend 50% or more of your work time engaged in non-exempt work such as: doing service checks, performing installations, manual labor, receiving, loading/unloading equipment, parts and supplies, performing customer service, completing routine paperwork, and generally doing the same kind of work as hourly subordinates?

If you answered "YES" to all of the three questions above, you may be owed overtime compensation under California law.

### MEAL BREAKS

Under California law, no employer shall employ any person for a work period of more than five (5) hours without an off-duty meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee. Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. Further, employers must keep time records showing whether meal periods are taken. Failure to comply with the meal period laws subjects the employer to liability for one hour of pay for each violation.

### REST BREAKS

Under California law every employer shall authorize and permit all non-exempt employees to take off duty rest periods, which insofar as practicable shall be in the middle of each work period. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one-half (3 1/2) hours.

Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages. Failure to comply with the rest break

# WYNNE LAW FIRM

## AUTO-CHLOR BRANCH MANAGER WAGE CLAIM NEWSLETTER

laws subjects the employer to liability for one hour of pay for each violation.

## FREQUENTLY ASKED QUESTIONS

### *IF AUTO-CHLOR OR ITS ATTORNEYS ASK ME TO SIGN A STATEMENT, DO I HAVE TO?*

No. No one, especially your employer or its attorneys, can involuntarily force you to sign a statement. Employers in this type of case frequently request declarations from their current employees in an effort to stop the case from going forward as a class action and to defeat the claims for back wages. Be aware that employers in this type of case may have interests that are antagonistic to yours. Anything you testify to may be used against you. So, if you sign anything, make sure that you first (1) understand what the purpose of the statement is, (2) understand everything that is written, and (3) make sure everything is the truth.

### *WHAT IS A CLASS ACTION?*

Class actions are lawsuits brought by one (or a few) individual(s) on behalf of all people who are similarly situated. One person can sue on behalf of a group of employees of one company who are all subject to the same alleged illegal policy or practice. The other employees can then share in the benefits of any settlement or judgment achieved by the class representative. Class actions avoid repetitious litigation by determining the claim once as opposed to many times. Class actions help individual employees by providing strength in numbers and protection by attorneys skilled and knowledgeable in this area of the law.

### *DO I HAVE TO PAY ATTORNEY FEES?*

No. In class actions the individual class members are not responsible for attorney fees. The attorneys get paid only if there is a recovery on behalf of the class. All fees and costs may be taken out of the common fund generated by the settlement or judgment of the case. In class actions, the judge determines the amount of fees the attorneys will recover and must also approve the costs.

### *WHAT IF THERE ARE NO RECORDS OF MY ACTUAL HOURS WORKED?*

All that is needed is your best recollection. In the typical situation where the employer has not kept any accurate records of when its salaried employees

work, the law provides that the next best evidence is what the employee said he or she worked. The employer then must disprove this evidence and that is very difficult when the employee's testimony is true and the employer has no records.

### *CAN I GET FIRED FOR BRINGING OR PARTICIPATING IN A CLASS ACTION?*

It is against the law for an employer to take any retaliatory action against an employee in response to an employee exercising a legal right such as seeking overtime pay or even providing evidence as a witness in such a case. Such conduct by an employer can subject the employer to further legal action including claims for punitive damages.

### *HOW FAR BACK CAN CLAIMS FOR OVERTIME GO?*

Four years from the date the complaint is filed.

## PUBLISHER INFORMATION

We are investigating a case against Auto-Chlor based on information we have received. We are responsible for this Newsletter. We are seeking factual information from former and current employees of Auto-Chlor to assist us in our investigation. All of the information in this Newsletter is our opinion based on information gathered to date.

For a list of past cases we have prosecuted on behalf of employees, please visit our website at www.wynnelawfirm.com

**You may contact us confidentially to discuss your legal rights.**

**Edward J. Wynne**
**Wynne Law Firm**
**80 E. Sir Francis Drake Blvd., Ste. 3-G**
**Larkspur, CA 94939**

**Tel: (415) 461-6400 ◆ Fax: (415) 461-3900**
**Email: ewynne@wynnelawfirm.com**
**Web: www.wynnelawfirm.com**

## WYNNE LAW FIRM

Wood Island
80 E. Sir Francis Drake Boulevard, Suite 3G
Larkspur, CA 94939
www.wynnelawfirm.com

BOISE ID 837

27 APR 2023 . PM 2  L

Debbie / FYI

Auto-Chlor System
Branch Manager
450 Ferguson Drive
Mountain View, CA 94043

MAY 1 – 2023

**ATTORNEY ADVERTISING**

94043-521450

**EXHIBIT 2**



← **Bryan Giribaldo** • • • 



Advertising Material

If you have already retained a lawyer for this matter, please disregard this communication. After searching through LinkedIn, we only learned your name, contact information, and profession.

Dear Marcus,

I hope you are well. Since my last message, our firm has been retained by former Auto-Chlor System ("Auto-Chlor") Branch Managers who have filed a collective action lawsuit against Auto-Chlor in which they claim that they and

other BMs nationwide were illegally denied overtime pay for hours worked over 40 in a week. I am writing to inquire if you also experienced the following:

• Being paid a salary but misclassified as exempt from overtime because your duties, despite your management job

 Write a message...



**3:51** 

← **Bryan Giribaldo** • • •

title, were primarily non-management in nature and included in large part doing much of the same work as the hourly associates, including dishwasher servicing and installations; and

- Working overtime hours without compensation.

If so, you may be eligible to join the lawsuit and claim unpaid overtime wages for the past 3 years, plus an additional equal amount of damages (i.e. double damages) under the federal law known as the Fair Labor Standards Act ("FLSA"). The FLSA also provides for the employer —not you—to pay any attorney's fees and

**3:51** 

← **Bryan Giribaldo** • • • 

If you do not wish to receive our correspondence, please respond advising accordingly.

Advertising Material

Sincerely,

Bryan Giribaldo

Pardell, Kruzyk & Giribaldo, PLLC

501 Congress Avenue

Suite 150

Austin, Texas 78701

Office: (561) 726-8444

**JOSEPH SAAH**
Regional Manager
saah@autochlor.com
37890 COMMERCE DR | STERLING HEIGHT, MI 48312
P: (586)979-5405



**KEN WOODCOX**
COO
woodcox@autochlor.com
450 FERGUSON DRIVE | MOUNTAIN VIEW, CA 94043
P: (650)967-3085



**Marcus Vanderpool** · 2:53 pm

Hi Bryan,

Thanks for reaching out, but I'm not interested.

 Write a message... 

**EXHIBIT 3**

345 Fed.Appx. 406
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals,
Eleventh Circuit.

Donald HAMM, Elliot Cook, Ronald Simms,
Mark Wagner, Martha Harris, Timothy
Bridges, David Bermudez, Edward Geiger,
III, Curtis Cortijo, Charles Depotter, Robert
Ellison, Phillip Pendell, Charles McNabb,
James MacDonald, individually and on
behalf persons similarly situated, Shavitz
Law Group, P.A., Plaintiffs–Appellants,
All Plaintiffs, Joe Mahar, et al., Plaintiffs,

v.

TBC CORPORATION, a Delaware
corporation, Tire Kingdom, Inc., a Florida
corporation, Defendants–Appellees.

No. 09–11221
|
Non–Argument Calendar.
|
Aug. 25, 2009.

**Synopsis**
**Background:** Employees brought proposed collective action
to recover unpaid overtime compensation from employers
under the Fair Labor Standards Act (FLSA). Employers
moved for sanctions against employees' law firm for directly
soliciting putative class members. The United States District
Court for the Southern District of Florida, 597 F.Supp.2d
1338,granted motion. Law firm appealed.

**Holdings:** The Court of Appeals held that:

sanctions imposed were reasonable, and

it was within discretion of district court to impose sanction
requiring law firm to pay all reasonable fees and costs
incurred by employer.

Affirmed.

**Attorneys and Law Firms**

**\*407** Gregg I. Shavitz, Hal B. Anderson, Shavitz Law
Group, P.A., Boca Raton, FL, D. Culver Smith, III, Fox
Rothschild LLP, West Palm Beach, FL, for Plaintiffs–
Appellants.

Chad K. Lang, Ford & Harrison, LLP, Miami, FL, for
Defendants–Appellees.

Appeal from the United States District Court for the Southern
District of Florida. D.C. Docket No. 07–80829–CV–KLR.

Before BLACK, BARKETT and KRAVITCH, Circuit
Judges.

**Opinion**

PER CURIAM:

**\*\*1** This case stems from a lawsuit brought by six named
plaintiffs, on behalf of themselves and others similarly
situated, **\*408** against TBC Corporation and Tire Kingdom,
Inc. (collectively "Tire Kingdom"). During the case, the
district court sanctioned Shavitz Law Group ("SLG"),
counsel for the current and putative opt-in plaintiffs, for
impermissibly soliciting clients. SLG appeals this imposition
of sanctions, arguing that they are disproportionately broad
and excessive. We disagree and therefore affirm the district
court's sanctions order.

**I. Facts**

This case was brought by six employees of Tire Kingdom as
a proposed collective action, seeking overtime compensation
allegedly owed to the plaintiffs under the Fair Labor
Standards Act ("FLSA"), 29 U.S.C. § 201, *et. seq.* Forty-
six other plaintiffs opted-in the suit. A few months after
the case was filed, Tire Kingdom filed a motion seeking
court-imposed sanctions against SLG for direct solicitation of
putative class members, in violation of Southern District of
Florida Local Rule 11.1.C and Florida Rule of Professional
Conduct 4–7.4(a). In the motion, Tire Kingdom alleged

that SLG impermissibly solicited at least three then current Tire Kingdom employees—Christopher Johnson, Nicholas Kilgore, and Shane Cook—in an attempt to convince them to join the pending lawsuit and have SLG represent them.

SLG conceded that the firm's administrative assistant, Tayara Oliveira, contacted Kilgore and Cook; the firm denied, however, that Oliveira solicited them as clients. Instead, the firm maintained that Oliveira contacted Kilgore and Cook in order to conduct a due diligence investigation, as required by Rule 11 of the Federal Rules of Civil Procedure, before having its client, Matthew Bitner, opt into the lawsuit. The firm did not explain whether or why it contacted Johnson.

The district court heard oral argument on Tire Kingdom's sanctions motion and then referred the matter to a magistrate judge for an evidentiary hearing. Kilgore, Cook, Johnson, and Christopher Blum, Kilgore and Cook's manager at the time of the solicitation calls, testified for Tire Kingdom. Kilgore and Cook, both employees of a Tire Kingdom subsidiary located in Kansas City, Missouri, testified that they received telephone calls on December 15, 2007 from a woman identifying herself as an employee of a law firm. She told Kilgore and Cook that she received their telephone numbers from Bitner and wanted to know if they would be interested in joining a lawsuit against Tire Kingdom. Johnson testified that he received a similar call on December 7, 2007, during which time he was an employee of a Tire Kingdom subsidiary in Shawnee Mission, Missouri, and that once he told the caller that he was not interested in joining the lawsuit, she asked if he knew anyone else who had lost wages. Telephone records confirmed that Kilgore, Cook, and Johnson received telephone calls from SLG on the dates in question. Johnson testified that he did not know Bitner and that the caller did not ask any questions about Bitner. Blum testified that he received a telephone call from Kilgore on December 15, 2007, stating that Bitner was suing Tire Kingdom. Blum stated that other employees in his store informed him that they had received calls regarding the same issue that was reported by Kilgore.

**\*\*2** Oliveira and Gregg Shavitz, the firm's sole partner, testified for SLG. Shavitz testified that employees received extensive training and that administrative assistants were frequently reminded not to solicit. Shavitz, however, admitted that the firm did not have a written policy on solicitation and that Oliveira was not given a script to work from when calling Johnson, Kilgore, **\*409** or Cook. Oliveira testified that she received a typed list of names and telephone numbers, which included those of Cook and Kilgore, from Bitner. She

admitted calling Cook and Kilgore on December 15, 2007, but stated that she only did so to get information about SLG's clients' claims, and not to entice them to join the case as plaintiffs.

Following the hearing, the magistrate judge issued a report and recommendation, finding that SLG solicited Kilgore, Cook, and Johnson to join the lawsuit against Tire Kingdom. The magistrate judge found Kilgore, Cook, and Johnson credible and concluded that SLG's motive for the solicitations was pecuniary gain. The magistrate judge also found that SLG failed to train Oliveira regarding solicitation of clients.

The magistrate judge recommended the following sanctions against SLG:

> 1) that Shavitz Law Group be barred from representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action ...;
>
> 2) that Shavitz Law Group be barred from collecting any fees or costs for work performed in representing any individual, including any current opt-in plaintiff, who did not work with any of the named plaintiffs in this action ...;
>
> 3) that Shavitz Law Group be ordered to formulate and implement a formal written policy on solicitation to inform and govern the conduct of all SLG attorney and non-attorney staff;
>
> 4) that a copy of this Report and Recommendation and any Order adopting it be forwarded to the Florida Bar for possible future action; and
>
> 5) that Shavitz Law Group be ordered to reimburse Defendants for all reasonable fees and costs incurred in bringing and prosecuting Defendants' Motion for Sanctions.

SLG filed objections to the magistrate judge's proposed sanctions 1, 2, and 5. The district court rejected SLG's objections and adopted the report and recommendation in its entirety.

SLG appeals, arguing that the district court's sanctions are disproportionately broad and excessive in light of the brevity of the calls, the lack of evidence that the firm ratified Oliveira's solicitation of clients, and the First Amendment issues at stake.

## II. Discussion

### A. Standard of Review

A court's decision to impose sanctions is reviewed for an abuse of discretion. *Harris v. Chapman,* 97 F.3d 499, 506 (11th Cir.1996).

### B. Sanctions 1 and 2

In its briefs to this court, SLG does not purport to challenge the magistrate judge's findings of fact, but rather only argues that sanctions 1 and 2 are disproportionately harsh and broad because the solicitation was conducted by a non-attorney and there is no evidence of attorney knowledge or ratification of the solicitation. Also, SLG argues that the calls were of short duration and there is no evidence that individuals were solicited to join the lawsuit. SLG also asserts that sanction 1 is disproportionately harsh in light of SLG's First Amendment interests. In sum, SLG concedes that imposition of some sanctions was appropriate, but argues that sanctions 1, 2, and 5 are too far-reaching. SLG contends that a more appropriate sanction would permit the representation and collection of fees from plaintiffs that might opt-in in the future.[1]

**\*410   \*\*3** "[A] federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). A court's decision as to "whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation." *Harris,* 97 F.3d at 506. The Rules Regulating the Florida Bar ("Florida Rules") contain an anti-solicitation provision which mandates that "a lawyer shall not solicit professional employment from a prospective client with whom the lawyer has no family or prior professional relationship, in person or otherwise, when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain." R. Reg. Fla. Bar 4–7.4(a). The Southern District of Florida Local Rules ("Local Rules") subject attorneys to discipline for violating the Local Rules or Florida Rules. S.D. Fla. L.R. 11.1.C. Such disciplinary measures may include disbarment, monetary sanctions, or "any other sanction the Court may deem appropriate." S.D. Fla. R. I.B.

First, it is appropriate to discuss the scope of the sanctions imposed. SLG interprets the district court's order as a categorical prohibition from SLG *ever* representing *any* plaintiff in *any* case against *any* defendant, unless the plaintiff is one of the six named plaintiffs in the instant case or was first a co-worker of one of the named plaintiffs. Although the language in the district court's order is imprecise, we find SLG's interpretation of the sanctions unreasonable. The district court expressly identified the purposes of the sanctions as "ensuring that counsel acts ethically in *this* litigation and ... sanctioning The Shavitz Law Group for unethically soliciting clients." *Hamm v. TBC Corp.,* 597 F.Supp.2d 1338, 1340 (S.D.Fla.2009) (emphasis added). There is no evidence indicating the district court intended for these sanctions to apply to future cases, or that the misconduct in this case would impact suits against defendants other than Tire Kingdom. We thus conclude that the district court's sanctions order only limits SLG's ability to represent opt-in plaintiffs in the instant case.

Once this misconception is removed, we conclude that sanctions 1 and 2 are not disproportionately broad or excessive. The named plaintiffs in this action are from Florida, Georgia, North Carolina, and Pennsylvania. There was no evidence before the magistrate judge as to how the opt-in plaintiffs, which included individuals from Texas, Louisiana, Alabama, Ohio, Maryland, Missouri, Massachusetts, and Illinois, learned about the suit and selected SLG as counsel. Under these circumstances, it was impossible for the magistrate judge to know which, if any, of these clients had also been solicited by SLG. Thus, the magistrate judge recommended narrowly tailored sanctions to permit SLG to continue to represent the named plaintiffs and co-workers of the named plaintiffs (presumably because they most likely learned about SLG and the lawsuit from **\*411** the named plaintiffs), but prohibited SLG from representing opt-in plaintiffs from other stores. These were reasonable and limited sanctions that balanced the danger that current and future opt-in clients were impermissibly solicited against SLG's interest in representing lawfully-obtained clients.[2]

**\*\*4** We similarly conclude that SLG's First Amendment argument is meritless. SLG argues that the sanctions in this case are too broad because under *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), sanctions must be tailored to specific findings, rather than the "mere possibility of abuses." SLG argues that because the sanctions prohibit the representation of opt-in plaintiffs that may not have been solicited, the sanctions are impermissibly broad and abridge SLG's ability to represent legitimately-obtained clients.

We conclude that the district court's order does not violate *Gulf Oil*. That case dealt with a broad sanction—a "complete ban on all communications concerning the class action between parties or their counsel and any actual or potential class member who was not a formal party, without the prior approval of the court." *Id.* at 94–95, 101 S.Ct. 2193. The lower court in *Gulf Oil* did not hear any evidence, make any findings of fact, and did not write an explanatory opinion to justify this sweeping ban. *Id.* at 93–96, 101 S.Ct. 2193. The Supreme Court found it troubling that there was no record for appellate review, and concluded that in light of the litigants' and attorneys' First Amendment interests, "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.* at 101, 101 S.Ct. 2193.

In the instant case, an evidentiary hearing was held, the report and recommendation contained detailed factual findings, and the magistrate judge discussed the *Gulf Oil* opinion when determining the appropriate form of sanctions. Under these circumstances, the district court did not abuse its discretion by prohibiting SLG from representing or collecting fees for opt-in plaintiffs, other than those that were co-workers of the named plaintiffs.

*C. Sanction 5*

Finally, SLG challenges the portion of the district court's order requiring SLG to pay all reasonable fees and costs incurred by Tire Kingdom in bringing and prosecuting its motion for sanctions. SLG provides no reasoning in support of this position, aside from re-stating its arguments about the lack of attorney ratification and that "such an over-broad remedy is severe." Federal Rule of Civil Procedure 11(c)(2) expressly permits a court to "award to the prevailing party [in a motion for sanctions] the reasonable expenses, including attorney's fees, incurred for the motion." Fed.R.Civ.P. 11(c)(2). Under the facts of this case, we do not consider the district court's imposition of this modest and statutorily-authorized sanction to amount to an abuse of discretion.

**III. Conclusion**

For the reasons set forth, we conclude that the district court did not abuse its **\*412** discretion in imposing the aforementioned sanctions against SLG.

**AFFIRMED.**

**All Citations**

345 Fed.Appx. 406, 2009 WL 2599663, 15 Wage & Hour Cas.2d (BNA) 420

Footnotes

1    SLG also argues that five current opt-in plaintiffs that were not co-workers of the named plaintiffs should be exempted from the order. In its objection to the magistrate judge's report and recommendation, however, SLG expressly stated that it "do[es] not object to all recommendations." It went on to explain that it "agreed to withdraw from representation of all [current] opt-in plaintiffs except for those who worked with the named plaintiffs." Thus, SLG has waived the right to challenge the portion of the district court's order that prohibits the representation of any current opt-in plaintiffs that were not co-workers of the named plaintiffs because SLG invited the alleged error. *See Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1341 n. 5 (11th Cir.2003) (invited error precludes review). We therefore limit our review to the sanctions prohibiting representation and collection of fees for future opt-in plaintiffs.

2    The magistrate judge expressly found that SLG failed to train Oliveira and that the firm solicited the clients for the purpose of pecuniary gain. We find it irrelevant that SLG claims that the solicitation was by a non-attorney, there was no evidence of attorney knowledge or ratification, and there were only three instances of solicitation. SLG's interpretation of the facts, even if correct, does not necessitate the conclusion that the district court abused its discretion.

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

**PROOF OF SERVICE**

I am employed in the County of **Los Angeles**, State of California.  I am over the age of 18 years and not a party to the within action; my business address is **300 Corporate Pointe, Suite 355, Culver City, California 90230.**

On the below-stated date, I served the foregoing document described as **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF; DECLARATIONS OF ED IVY AND CRAIG A. HOROWITZ** on all interested parties in this action.

☒ by placing ☐ *the original* ☒ *a true copy* thereof in a sealed envelope addressed as follows:

☐      BY MAIL TO:

☐      As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date is more than one day after the date of deposit for mailing in affidavit.

☐      BY PERSONAL SERVICE I caused such envelope to be hand delivered to the offices of the following addressee:

☐      BY FACSIMILE: I personally sent such document via fax to the offices of the addressee, with **confirming copy** by **First Class Mail** as follows:

☒      BY E-MAIL: I personally sent such document via e-mail to the addressee as follows:

Logal A. Pardell: lpardell@pkglegal.com

Edward J. Wynne: ewynne@wynnelawfirm.com

Declaration

☐      (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒      (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed June 20, 2023, at Los Angeles County, California.

ELDA GONZALEZ