Edward J. Wynne   (SBN 165819)
ewynne@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone    (415) 461-6400
Facsimile    (415) 461-3900

Logan A. Pardell* (admitted *pro hac vice*)
lpardell@pkglegal.com
PARDELL, KRUZYK & GIRIBALDO, PLLC
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Telephone (561) 447-8444
Facsimile (877) 453-8003

*Counsel for Plaintiffs and the Putative Collective*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SABLOWSKY and SUMNER JOHNSON, *on behalf of themselves and others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC<br><br>Defendants. | Case No. 3:23-cv-02555-AGT<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR ISSUE AND MONETARY SANCTIONS; PLAINTIFFS' REQUEST FOR SANCTIONS AGAINST DEFENDANTS AND DEFENSE COUNSEL**<br><br>Date: July 28, 2023<br>Time: 10:00 a.m.<br>Dept. A, 15th Floor<br>Hon. Alex G. Tse |

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     STATEMENT OF ISSUES ...................................................................................2

III.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...........................2

        A.      The Newsletter Envelope: "Debbie / FYI." ...............................................2

        B.      The Newsletter. .........................................................................................3

        C.      The Filing of This Action Against Defendants...........................................5

        D.      The LinkedIn Message................................................................................5

        E.      Defendants Never Attempted to Meet and Confer Prior to Filing the
                Motion.........................................................................................................6

IV.     ARGUMENT .......................................................................................................6

        A.      Legal Standard Governing a Motion for Sanctions Under the Court's
                Inherent Authority......................................................................................6

        B.      Legal Standard Governing Written Solicitations by Attorneys to
                Prospective Clients....................................................................................7

        C.      Plaintiffs' Counsel Did Not Violate the Rules of Professional Conduct of
                Any State...................................................................................................8

                1.      Plaintiffs' Counsel's Newsletter Does Not Violate the California
                        Rules of Professional Conduct.............................................................8

                2.      Plaintiffs' Counsel's LinkedIn Communication Did Not Violate
                        Any Rules of Professional Conduct in Any State...............................11

        D.      Defendants' Argument that Plaintiffs are Interfering with the Opt-in
                Procedure is Spurious. ...........................................................................14

        E.      Defendants' Reliance on *Hamm* is Misplaced. ................................15

        F.      The Court Should Sanction Defendants and Their Counsel and Not Permit
                Defendants to File Any Motions Without First Seeking Leave......................17

V.      CONCLUSION...................................................................................................18

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Accord United States v. Blount,*
  523 F. App'x 298 (5th Cir. 2013) ........................................................................18

*Am. Unites for Kids v. Rousseau,*
  985 F.3d 1075 (9th Cir. 2021) ...............................................................................6

*Berndt v. Cal. Dep't of Corr.*
  No. 03 Civ. 3174, 2010 U.S. Dist. LEXIS 133300 (N.D. Cal. Dec. 16, 2010). ..............9, 14

*Cortez v. Purolator Air Filtration Prods. Co.,*
  23 Cal. 4th 163 (2007) ...........................................................................................9

*Deardorff v. Cellular Sales of Knoxville, Inc.,*
  No. 19 Civ. 2642, 2023 U.S. Dist. LEXIS 95864 (E.D. Pa. June 1, 2023) ..........12

*Gulf Oil Co. v. Bernard,*
  452 U.S. 89 (1981) .........................................................................................14, 15

*Hamm v. TBC Corp,*
  345 F. App'x 406 (11th Cir. 2009) ...................................................................15, 16

*Hamm v. TBC Corp.,*
  597 F. Supp. 2d 1338 (S.D. Fla., Dec. 30, 2008) .............................................15, 16

*Hernandez v. Best Buy Stores, L.P.,*
  2015 WL 7176352 (S.D. Cal. Nov. 13, 2015) ........................................................8

*Hoffman La-Roche v. Sperling,*
  493 U.S. 165 (1989) ...............................................................................................14

*Jensen v. Phillips Screw Co.,*
  546 F.3d 59 (1st Cir. 2008) ...................................................................................17

*Jones v. Illinois Central R.R. Co.,*
  617 F.3d 843 (6th Cir. 2010) .................................................................................17

*Lahiri v. Universal Music & Video Distribution Corp.,*
  606 F3d 1216 (9th Cir. 2010) ................................................................................17

*Lee v. Telecheck Corp.,*
  No. 12 Civ. 705, 2013 U.S. Dist. LEXIS 143854 (D. Nev. Oct. 4, 2013) ............18

*Liebowitz v. Bandshell Artist Mgmt.,*
  6 F.4th 267 (2nd Cir. 2021) ..................................................................................17

*Shapero v. Ky. Bar Ass'n,*
  486 U.S. 466 (1988) ...........................................................................................7, 16

*Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,*
  471 U.S. 626 (1985) ............................................................................................7, 16

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Statutes**

28 U.S.C.
§ 1927 .................................................................................................................... 17

29 U.S.C.
§ 255(a) ................................................................................................................. 13

California Buissiness & Professions Code
§ 17200 ................................................................................................................... 9

**Rules**

California Rule of Professional Conduct
3.3 ......................................................................................................................... 11

California Rule of Professional Conduct
7.1 ...................................................................................................................... 8, 9

California Rule of Professional Conduct
7.2 ...................................................................................................................... 8, 9

California Rule of Professional Conduct
7.3 ........................................................................................................ 8, 9, 10, 11

Application of Rules, Florida Rule
4-7.11(b) ............................................................................................................... 11

Florida Rule of Professional Conduct
4-7.18 (a)(1) ......................................................................................................... 16

Illinois Rule of Professional Conduct
7.3(c) .................................................................................................................... 11

**Other Authorities**

Vapnek, Tuft, Peck & Wiener,
*Rutter Group Prac. Guide: Cal. Prof. Resp.* § 2:333.10 (The Rutter Group 2009) ............. 10

## I.   INTRODUCTION

The attorneys of Wynne Law Firm and Pardell, Kruzyk & Giribaldo, PLLC ("PKG") (collectively "Plaintiffs' counsel") take their ethical obligations to the bars of this Court, and those around the country, seriously. Plaintiffs' counsel understands the importance of complying with legal advertising and solicitation rules, both to maintain the integrity of the cases that they bring, and to maintain the integrity of the profession as a whole. Unfortunately, Auto-Chlor System, LLC, Auto-Chlor System of New York City, Inc., and Auto-Chlor System of the Mid South, LLC (collectively "Defendants") and their counsel see these rules as weapons that they can recklessly wield to erroneously disparage others, solely in an attempt to gain an advantage in a pending case. In doing so, they appear to be attempting to mislead the Court, which is an ethical violation itself.

Against that backdrop, Defendants' motion for sanctions is utterly devoid of merit and warrants sanctions against Defendants and their counsel. Simply by referring to the documents erroneously attached to Defendants' motion, the Court can conclude that every argument Defendants make is spurious and every fact upon which they rely is either a misrepresentation or an outright lie. Plaintiffs' counsel did not improperly solicit putative collective members in violation of the ethics rules in either California, Florida, or Illinois. Nor did Plaintiffs' counsel seek to undermine the Fair Labor Standards Act ("FLSA") opt-in procedure, which has not even begun as this case is still in the pleadings stage. More importantly, there is nothing misleading or deceptive about Plaintiffs' communications to potential collective members. Plaintiffs' counsel was either legitimately investigating Plaintiffs' claims or contacting potential collective members who might have potential claims within the appropriate rules involving contact with those persons. In contrast, Defendants substitute speculation and innuendo for evidence and cannot make the requisite showing to justify an order limiting Plaintiffs' precertification communications or monetary sanctions. Nevertheless, Defendants demand that the Court impose terminating sanctions while relying on an inapposite case—where the sanctioned counsel in that case made what the district court considered in-person solicitations in direct contravention of the applicable ethical rules. In all, Defendants' motion is completely baseless

and only foreshadows Defendants' counsel's apparent willingness to waste this Court's limited resources with frivolous motions. This is further underscored by the utter lack of supporting authority for Defendants' numerous attacks, as the vast majority of Defendants' arguments are based solely on Defendants' counsel's supposition, and without any supporting authority.

As such, the Court should (1) reject Defendants' motion for sanctions in its entirety; (2) impose monetary sanctions on Defendants and their counsel both to compensate Plaintiffs for their time responding to Defendants' improper motion and as a deterrent to future misconduct; and (3) as a prophylactic measure to prevent further abuse, require Defendants to first seek of leave of this Court prior to filing any motion in the future.

## II.   STATEMENT OF ISSUES

1.   Did Wynne Law Firm engage in sanctionable conduct by delivering a written communication to persons in California which referenced a potential four-year statute of limitations period for violations of California employment law?

2.   Did Wynne Law Firm engage in sanctionable conduct by delivering a written communication to persons in California with the phrase "ATTORNEY ADVERTISING" on the envelope, but not within the underlying letter itself?

3.   Did Pardell, Kruzyk, & Giribaldo, PLLC engage in sanctionable conduct by communicating with a person in Illinois regarding their employment with Defendants while using the words "managers" and "nationwide," and by referencing a potential three-year statute of limitations period applicable to willful violations of the FLSA?

4.   Should this Court enter an order sanctioning Defendants for advancing a motion for sanctions against Plaintiffs' counsel without a reasonable basis for doing so?

## III.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Newsletter Envelope: "**Debbie** / FYI."

On or about April 27, 2023, counsel for Plaintiffs, Edward J. Wynne, caused to be mailed a written, two-page newsletter (the "Newsletter") to 16 Auto-Chlor branches located throughout California. (Dkt. No. 16, Ex. 1 erroneously attached to the Declaration of Horowitz,

ECF pp. 20-21.)[1] Each envelope containing the Newsletter has "**ATTORNEY ADVERTISING**" boldly and prominently written on the right-side of the outside of the envelope. (Dkt. No. 16, Ex. 1, ECF p. 22.) The exhibit Defendants attached to the Declaration of Defendants' counsel Craig A. Horowitz (it is allegedly authenticated by Defendants' President Ed Ivy) has a handwritten notation stating, "<u>Debbie</u>/FYI," with a large arrow pointing at the "ATTORNEY ADVERTISING" language shown below:



Plaintiffs' counsel did not handwrite or otherwise include "<u>Debbie</u>/FYI" onto any envelopes containing the Newsletter sent out by Plaintiffs' counsel. (Decl. of Edward J. Wynne ("Decl. of Wynne"), ¶ 2; Dkt. 16, Ex. 1, ECF p. 22.)

**B.      The Newsletter.**

The Newsletter header states in bold, conspicuous lettering "**WYNNE LAW FIRM**" and does not indicate it is from any court. (Dkt. No. 16, Ex. 1, ECF pp. 20-21) The header below states in bold, conspicuous lettering that it is the "**AUTO-CHLOR BRANCH MANAGER WAGE CLAIM NEWSLETTER**" and makes no mention of a pending court action (which was impossible due to the fact that the action did not exist at the time the Newsletter was mailed). (*Id*.) The header at the top of the first paragraph states in bold, conspicuous lettering,

---

[1] Defendants did not follow this Court's Civil Standing Order section VI (C) by failing to file each exhibit separately on ECF.  The Civil Standing Order was served on Defendants with the Summons and other initiating documents (Dkt. Nos. 13, 14, 15.)

"**INVESTIGATION ON BEHALF OF AUTO-CHLOR BRANCH MANAGERS WHO *MAY* BE OWED BACK WAGES**." (*Id*.) (emphasis added to "MAY").

The first sentence of the Newsletter states, "This office is investing (sic) a claim on behalf of Auto-Chlor Branch Managers."[2] (*Id*.) In the second paragraph, Plaintiffs' counsel states, "[w]e have *reason to believe* that Auto-Chlor Branch Managers are not being paid all the wages they are owed." (*Id*., emphasis added). In the third paragraph counsel relay the facts of their investigation "to-date" supporting misclassification. (*Id*.) In the next sentence, Plaintiffs' counsel states that "based on these facts, we believe that Branch Managers *may* be owed overtime compensation…." (*Id.*, emphasis added). The first section of the Newsletter concludes, "[i]f you are a current or former Branch Manager of Auto-Chlor in California, we would like to speak to you about your experience[.]" (*Id*.) Each and every sentence of the section is consistent with an investigation of Plaintiffs' claims.

The following section of the Newsletter is titled in bold, conspicuous lettering, "**SALARIED EMPLOYEES MAY BE ENTITLED TO OVERTIME**." (*Id*.) This section explains common circumstances where managerial employees are misclassified as exempt and offers a quick three-part test to determine whether they may be owed overtime wages. (*Id*.) The next two sections, "**MEAL BREAKS**" and "**REST BREAKS**," explain California law to the recipients, who are all California-based employees. (*Id*.)

The next section of the Newsletter states in bold, conspicuous lettering, "**FREQUENTLY ASKED QUESTIONS**," that explain employees' legal rights in the context of a class action. These FAQs are set forth in the Newsletter as follows:

- "IF AUTO-CHLOR OR ITS ATTORNEYS ASK ME TO SIGN A STATEMENT, DO I HAVE TO?"
- "WHAT IS A CLASS ACTION?"
- "DO I HAVE TO PAY ATTORNEY FEES?"
- "CAN I GET FIRED FOR BRINGING OR PARTICIPATING IN A CLASS ACTION?"
- "HOW FAR BACK CAN CLAIMS FOR OVERTIME GO?" (*Id*.)

---

[2] Due to a scrivener's error, Plaintiffs' counsel meant to write "investigating."

The last section is titled in bold, conspicuous lettering, "**PUBLISHER INFORMATION**," which reiterates, "[w]e are investigating a case against Auto-Chlor based on information we have received. We are seeking factual information from former and current employees of Auto-Chlor to assist us in our investigation. All of the information in this Newsletter is our opinion based on information gathered to date." (*Id*.) The Newsletter concludes by giving the recipient the option to confidentially contact Wynne Law Firm to discuss their legal rights. (*Id*.) At no point does the Wynne Law Firm offer to represent the recipient of the Newsletter, provide guarantees of success, or even give examples of past successes. (*Id*.)

**C.      The Filing of This Action Against Defendants.**

On May 24, 2023, nearly a month after the Newsletter was sent to California Auto-Chlor branches, Plaintiffs filed their complaint in this Court against Defendants. (Dkt. 1.) The complaint alleged a representative action on behalf of a collective of Branch Managers under the FLSA for unpaid overtime based on misclassification. (*Id*.)

**D.      The LinkedIn Message.**

After the filing of the Complaint in this action, in June 2022, Bryan Giribaldo, a partner at PKG, sent Marcus Vanderpool an InMail via LinkedIn. (Dkt. No. 16, Ex. 2 erroneously attached to the Declaration of Horowitz, ECF p. 24.) Upon information and good faith belief, Mr. Vanderpool resides in Illinois and formerly worked for Auto-Chlor System, LLC, as a Branch Manager. (Decl. of Bryan Giribaldo ("Decl. of Giribaldo"), ¶¶ 9-10.)

At the beginning of the message, Mr. Giribaldo states that it is "Advertising Material." (*Id*., ECF p. 24.) At the end of the message, he again states that it is "Advertising Material." (*Id*., ECF p. 26.) Before addressing Mr. Vanderpool, Mr. Giribaldo makes it clear that if he is represented by counsel, he is to disregard the message. (*Id*., ECF p. 24.) In the message, Mr. Giribaldo informs Mr. Vanderpool that his firm has been retained by other Auto-Chlor branch managers who filed a lawsuit; inquires as to his experiences as a branch manager; advises as to what circumstances he may be owed overtime wages; and informs him that he may pursue those wages by way of the lawsuit without fronting attorney fees, (*Id*., ECF pp. 24-26.) All of these

statements are true. He concludes his message by giving Mr. Vanderpool the option to respond or to cease receiving Mr. Giribaldo's correspondence. (*Id*., ECF p. 26.) Mr. Vanderpool thanked Mr. Giribaldo but stated he was not interested. (*Id*., ECF p. 27.) Mr. Giribaldo heeded that request and did not subsequently communicate with Mr. Vanderpool.  (Decl. of Giribaldo, ¶ 11.).

### E.   Defendants Never Attempted to Meet and Confer Prior to Filing the Motion.

Defendants never even attempted to meet and confer prior to filing their Motion for Sanctions. (Decl. of Wynne, ¶ 4; Decl. of Giribaldo, ¶ 13.) As detailed more fully herein, Defendants' arguments are devoid of merit and, if Defendants had conferred prior to the filing of their motion for sanctions, the motion would have conceivably been averted after discussing the futility of Defendants' arguments. Defendants' failure to even attempt to meet confer underscores Plaintiffs' point: this motion is without any basis and has been presented in bad faith for the singular purpose to vex, annoy and harass Plaintiffs' counsel and impugn their credibility before this Court. Such behavior warrants the sanctions Plaintiffs request herein.

## IV.   ARGUMENT

### A.   Legal Standard Governing a Motion for Sanctions Under the Court's Inherent Authority.

The standards governing an imposition of sanctions under the Court's inherent authority—the only basis Defendants advance in this matter—were recently detailed in *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075 (9th Cir. 2021):

> "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'"
>
> * * *
>
> "To protect against abuse and to ensure parties receive due process, individuals subject to sanction are afforded procedural protections, the nature of which varies depending upon the violation, and the type and magnitude of the sanction." "The more punitive the nature of the sanction, the greater the protection to which an individual is entitled." Thus, when a court is considering using its inherent authority to impose sanctions, the first step is to determine whether the potential sanctions that may be imposed are compensatory,

punitive, or both. The answer to this question will affect both the procedural requirements and the substantive limitations that apply. To use a simplistic analogy, a district court must first determine whether the party commencing a legal action is seeking a civil (compensatory) remedy or a criminal (punitive) outcome so that the correct procedural requirements and substantive limitations can be correctly applied.

The Supreme Court has explained that when strictly compensatory or remedial sanctions are sought, civil procedures, rather than criminal-type procedures, may be applied. Thus, when only civil procedures are used, the sanction may go no further than to redress the wronged party "for losses sustained" and may not impose any additional consequence as punishment for the sanctioned party's misbehavior. As clarified by the Supreme Court in Goodyear, when a sanction is imposed under a court's inherent authority as a penalty or to punish someone, "a court would need to provide procedural guarantees applicable in criminal cases, such as a 'beyond a reasonable doubt' standard of proof."

\* \* \*

*When acting under its inherent authority to impose a sanction, as opposed to applying a rule or statute, a district court must find either: (1) a willful violation of a court order; or (2) bad faith. As the Supreme Court has explained, a sanction may be awarded either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.*

\* \* \*

. . . bad faith, including conduct done vexatiously, wantonly, or for oppressive reasons, requires proof of bad intent or improper purpose. Bad faith also is not restricted to situations where the action was filed in bad faith. Bad faith may also be found in the conduct of the litigation. Finally, because a district court's inherent powers are so potent, we require that when a court imposes sanctions based on bad faith, the court must make an explicit finding that the sanctioned party's conduct "constituted or was tantamount to bad faith."

*Id.* at 1088-90 (internal citations omitted) (emphasis added).

B.     **Legal Standard Governing Written Solicitations by Attorneys to Prospective Clients.**

"The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading." *Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, 471 U.S. 626, 638 (1985). "A state may not, consistent with the First and Fourteenth Amendments, categorically prohibit lawyers from soliciting business for pecuniary gain by sending truthful and nondeceptive letters to potential clients known to face particular legal problems." *Shapero v. Ky. Bar Ass'n*, 486 U.S. 466, 478 (1988);

*see also, Hernandez v. Best Buy Stores, L.P.* 2015 WL 7176352, *5-7 (S.D. Cal. Nov. 13, 2015) (denying motion for sanctions and disqualification based on phone and written communications with potential class members).

### C. Plaintiffs' Counsel Did Not Violate the Rules of Professional Conduct of Any State.

#### 1. Plaintiffs' Counsel's Newsletter Does Not Violate the California Rules of Professional Conduct.

Although Defendants' frivolous motion relies specifically on California Rule of Professional Conduct 7.3, it also implicates other rules; in particular, Rule 7.1, which governs "Communications Concerning a Lawyer's Services," and Rule 7.2, which concerns "Advertising." Contrary to Defendants' argument, Plaintiffs' counsel did not violate any of these rules by sending the Newsletter to Auto-Chlor branch locations.

California Rule of Professional Conduct 7.1(a) states: "[a] lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services" and "[a] communication is false or misleading if it contains a material misrepresentation of fact or law, or omits facts necessary to make the communication considered as a whole not materially misleading."

Here, the Newsletter is entirely truthful and does not include any false or misleading statements. Instead, rather than identify any objectively untrue statements, Defendants ask this Court to engage in conjecture that Wynne Law Firm is being "deceptive," "intrusive," and not really investigating Plaintiffs' claims. In every instance, however, the Newsletter's content is consistent with Wynne Law Firm's investigating alleged violations of the California Labor Code—the statutory law applicable to California-based employees. Notably, in advancing its argument that the Newsletter is deceptive, Defendants cite zero cases and supporting authority in support of its position.

For instance, Defendants state that "the solicitation states that claims for overtime can go back '[f]our years from the date the complaint is filed,' rather than the two-year statute of limitations under the FLSA." (Dkt. 16, ECF p. 10.) Defendants fail to address the fact that overtime claims brought under California law are subject to a four-year statute of limitations,

and the Newsletter is not specifically narrowed to the FLSA. Cal. Bus. & Prof. Code §§ 17200 *et seq.*; *see also Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 178 (2007). Because the Newsletter contemplated overtime claims under California law—as it was sent to only California-based Branch Managers—it made no misrepresentations about the potentially applicable statute of limitations. (Dkt. 16, Ex. 1 erroneously attached to the Declaration of Horowitz, ECF p. 20) ("If you answered 'YES' to all of the three questions above, you may be owed overtime compensation under California law.").

California Rule of Professional Conduct 7.2(a) governing "Advertising" states, "[s]ubject to the requirements of rules 7.1 and 7.3, a lawyer may advertise services through any written, recorded or electronic means of communication, including public media." In addition, Rule 7.2(c) states, "[a]ny communication made pursuant to this rule shall include the name and address of at least one lawyer or law firm responsible for its content." (*Id.*) Here, the Newsletter is a communication but does not advertise Wynne Law Firm's services. Notwithstanding, in an abundance of caution, Wynne Law Firm included the phrase "Attorney Advertising" on the Newsletter's outside envelope to avoid any claim that Rule 7.2 was somehow violated.

California Rule of Professional Conduct 7.3(e) defines "solicitation" as an "oral or written targeted communication initiated by or on behalf of the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services." (*Id.*) Here, the Newsletter is not even a solicitation as defined by the California Rules of Professional Conduct. The Newsletter reiterates to the recipient that Wynne Law Firm is investigating potential claims against Auto-Chlor stemming from its misclassification of its Branch Managers. Nowhere in the Newsletter does Wynne Law Firm offer to provide legal services. At most, Wynne Law Firm offers the recipient the option to contact its office to learn about their legal rights. Even if the Newsletter was found to be a solicitation, Wynne Law Firm nevertheless complied with the California Rules of Professional Conduct. In interpreting the California Rules of Professional Conduct, the Northern District of California found in *Berndt v. Cal. Dep't of Corr.*:

Plaintiffs' counsel sent letters to various correctional officers' associations

9

> notifying them about the class action and asking for female officers that face similar problems to contact counsel. Even if I were to consider these letters to be solicitation letters rather than investigatory letters, California Rule of Professional Conduct 1-400 and Model Rule of Professional Conduct 7.3 do not prohibit attorneys from writing such letters because they are not communications made in person or by telephone. Moreover, attorneys are generally permitted in class actions "to communicate with potential class members for the purpose of investigating and preparing the action." *See* Vapnek, Tuft, Peck & Wiener, *Rutter Group Prac. Guide: Cal. Prof. Resp.* § 2:333.10 (The Rutter Group 2009).

No. 03 Civ. 3174, 2010 U.S. Dist. LEXIS 133300, at *7 n.6 (N.D. Cal. Dec. 16, 2010).

California Rule of Professional Conduct 7.3(c) requires "every written, recorded or electronic communication from a lawyer soliciting professional employment from any person known to be in need of legal services in a particular matter shall include the word 'Advertisement' or words of similar import on the outside envelope, if any[.]" (*Id.*) In this instance, Defendants' motion is particularly galling as it seeks to brazenly mislead the Court. Defendants' motion cites to Rule 7.3 and emphasizes the clause requiring the "Advertisement" label be placed "at the beginning and ending of any recorded or electronic communication[.]" Having just cited to the rule, Defendants then intentionally misrepresent the rule to argue Wynne Law Firm was required to place "Advertisement" on the *written* Newsletter as well, rather than on the outside of the envelope—as the rule explicitly requires. To be abundantly clear, Defendants attempt to mislead the Court by (1) conflating the disclosure requirements for *recorded or electronic* solicitations with those for *written* solicitations; and then (2) arguing that Wynne Law Firm should be sanctioned for failing to comply with the disclosure requirements for *recorded or electronic* solicitations for the Newsletter: a *written* solicitation. (*Id.*) Indeed, Defendants even drop a footnote acknowledging "Attorney Advertisement" was reflected on the outside envelope. (Dkt. 16, p. 2, fn. 1.)

Cognizant of this misrepresentation, Defendants then make the flimsy argument that the recipient of the Newsletter *might* not see the "Advertising" label on the outside envelope. This argument is belied by the fact that Defendants' *own exhibit* has a handwritten note saying "Debbie/FYI" pointing directly at the "Advertising" label, which indicates that someone in fact *did* see the outside envelope and specifically brought to the recipient's attention the fact that it

is "**ATTORNEY ADVERTISING**." But this is ultimately beside the point, as Defendants' argument appears to take issue with the requirements of California Rule of Professional Conduct 7.3(c), and not Wynne Law Firm's compliance with it.[3]

Lastly, Defendants' counsel's misrepresentations to the Court regarding the Newsletter violate the Rules of Professional Conduct, specifically Rule 3.3 governing "Candor Toward the Tribunal." Rule 3.3(a) states a lawyer shall not: (1) knowingly make a false statement of fact or law to a tribunal[.]" (*Id.*) Here, Defendants' counsel is not merely misinterpreting the State of California's ethics rules but misrepresenting them in an attempt to professionally disparage Plaintiffs' counsel and obtain monetary and terminating sanctions. The Court should not countenance such intentionally misleading and baseless claims and take appropriate action to sanction such gross misconduct.

### 2. Plaintiffs' Counsel's LinkedIn Communication Did Not Violate Any Rules of Professional Conduct in Any State.

Defendants erroneously claim that PKG violated the rules regulating the Florida Bar when Mr. Giribaldo sent a LinkedIn message to a former Auto-Chlor Branch Manager, Marcus Vanderpool. (Decl. of Giribaldo, ¶ 8.) Because, upon information and good faith belief, at the time of the subject message Mr. Vanderpool was a resident of Illinois, the Illinois Rules of Professional Conduct apply.[4] Rule 7.3 (c) of Illinois Rules of Professional Conduct is consistent with the language of Rule 7.3(c) of the California Rules of Professional Conduct, except that the Illinois Rule requires that the specific words "Advertising Material" appear at the beginning

---

[3] The appropriate venue for changing the language of that rule is not a motion for sanctions filed in Federal Court—a motion that Defendants filed without any prior discussion or conferral with Plaintiffs' counsel.

[4] *See, e.g.,* Florida Rule 4-7.11(b), governing the "Application of Rules," maintains that the Florida Bar's advertising regulations apply to "lawyers, whether or not admitted to practice in Florida or other jurisdictions, *who advertise that the lawyer provides legal services in Florida or who target advertisements for legal employment at Florida residents*." (*Id.*, emphasis added.) While Pardell, Kruzyk & Giribaldo, PLLC ("PKG") is based in Florida, Mr. Giribaldo contacting Mr. Vanderpool in Illinois is not advertising legal services in Florida or targeting advertisement for legal employment at a Florida resident. Thus, Florida's Rules would not apply and Illinois' Rules would.

---

23-cv-02555-AGT
PLAINTIFFS' OPPOSITION TO MOTION FOR SANCTIONS

and ending of the electronic communication.

PKG did not violate any Illinois ethics rule—nor do Defendants contend that they did. The message cited by Defendants does in fact include the words "Advertising Material" in the beginning and ending of the message (*see* Dkt. No. 16, Ex. 2) and thus complies with the Illinois Rules of Professional Conduct requirements. Moreover, Defendants do not—and cannot—contend that the use of LinkedIn messages is inappropriate or prohibited solicitation. *See, e.g.*, *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19 Civ. 2642, 2023 U.S. Dist. LEXIS 95864, at *26 (E.D. Pa. June 1, 2023) ("Given Defendants' acknowledgement that LinkedIn solicitations are somewhat routine with wage-and-hour claims cases, the Court cannot find that these solicitations indicate bad faith or intentional misconduct on the part of Plaintiffs' counsel.").

Notably, *Defendants do not identify anything untruthful in the LinkedIn communication*. Instead, Defendants seek to sanction Plaintiffs' counsel based on an outright frivolity: it contends that Plaintiffs should be sanctioned because Mr. Giribaldo stated that PKG represents former "Branch Manager<u>s</u>," and the use of pluralization of the word "managers" is deceptive. (Dkt. 16, ECF pp. 14-15.) Defendants contend that this is deceptive because Plaintiffs' counsel only currently represents two branch managers, and the pluralization of the word "managers" somehow implies that the number of represented branch managers is some nebulous amount larger than two. (*Id*.) Plaintiffs' counsel has been retained by two branch managers; hence, pluralizing branch "managers" is appropriate and grammatically correct.

Of course, Defendants do not explain the standard they seek to enforce for when pluralization is appropriate: would five branch managers be enough? What if the company had 100,000 branch managers, and Plaintiffs' counsel only had signed retainers with four of them? Must Plaintiffs obtain a statistically significant sampling of branch managers in order to pluralize the word without being deceptive? Defendants offer no answers to these questions, nor any guiding principles that could answer them, and—most significantly—Defendants cite zero authority supporting their position that this pluralization is "deceptive." Nor can they, as the pluralization of the word managers is factually accurate. Given the heightened standards

Defendant must meet in order to obtain the sanctions it seeks, this Court should not indulge Defendants' attempt to inject arbitrary and self-serving standards with no basis in law.

While not explicit, Defendants also claim that the reference to the pending action being "nationwide" is misleading. As an initial matter, Plaintiffs' counsel represented that "[Plaintiffs] . . . have filed a collective action lawsuit against Auto-Chlor in which they claim that they and other BMs nationwide were illegally denied overtime pay for hours worked over 40 in a week." (Dkt. No. 16, ECF pp. 23-24.) Plaintiffs indeed seek to certify a collective of "all current and former exempt-classified Branch Managers who worked at any of Defendants' locations in the United States at any time from three years prior to the filing of this complaint and the date of final judgment of this matter." (Dkt. 1, ECF p. 2.) Thus, characterizing this FLSA action—in which Plaintiffs seek to represent Branch Managers nationwide— as potentially "nationwide" is factually correct. Defendants, again, cite zero authority suggesting that this contention is deceptive or misleading—nor can they. In fact, Defendants do not even specifically state what they believe to be misleading about the use of the word "nationwide," while nevertheless seeking sanctions on that basis.

Lastly, Defendants make a throwaway argument—again without any supporting authority—that Plaintiffs should be sanctioned for referencing a three-year statute of limitations, "even though Plaintiffs have alleged no facts demonstrating any purported wilfulness[sic]." (Dkt. 16 at 15.) Given that Defendants could locate no authority supporting its argument, the Court should—correctly—presume this argument to be frivolous. As discussed *supra,* Argument § C.1, the FLSA provides for a three-year statute of limitations for violations that are deemed to be willful. *See* 29 U.S.C. § 255(a). Plaintiffs allege that Defendants' violations of the FLSA were willful. (*See* Dkt. 1 ¶¶ 85, 99, 113.) Defendants' argument that Plaintiffs did not allege sufficient facts for a finding of willfulness is properly addressed in a motion to dismiss—as it attempted to do, and to which Plaintiffs responded. (*See* Dkts. 9, 19.) Seeking sanctions on this basis, without even a fleeting attempt to meet the heightened standards necessary to merit sanctions, is a waste of this Court's and Plaintiffs' counsel's time and resources.

In summary, Defendants' arguments that Plaintiffs' counsel violated ethics rules are unsupported by caselaw, contradict the straightforward facts underlying this matter, and are accordingly baseless. This Court should deny Defendants' motion on this basis.

### D.     Defendants' Argument that Plaintiffs are Interfering with the Opt-in Procedure is Spurious.

Defendants' motion repeatedly cites *Hoffman La-Roche v. Sperling* for the proposition that Plaintiffs' Newsletter and the LinkedIn message seek to interfere with the FLSA opt-in procedure. 493 U.S. 165 (1989). However, *Hoffman La-Roche* is inapposite because it merely annunciates a district court's discretion to issue notice to absent class members advising them of their ability to opt-in to an FLSA action. (*Id*. at 484.) The principles discussed in *Hoffman La-Roche* do not bar Plaintiffs' counsel's communications because the FLSA notice process has not commenced. *See Berndt*, 2010 U.S. Dist. LEXIS 133300, at *7 n.6 (approving the use of similar investigative communications). The Newsletter was sent before the action was filed. The LinkedIn communication was sent shortly after the action was filed, and long before Defendants answered or responded to the complaint. This case is still in the pleadings stage. No motion for conditional certification has been filed and accordingly, no notice has been sent to the putative collective. Plaintiffs' counsel cannot interfere with a notice process that does not yet exist.

The proper standard for precertification communications is set forth in *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981). In *Gulf Oil*, the U.S. Supreme Court held that an order limiting precertification communications "interfered with the [Plaintiffs' counsel's] efforts to inform potential class members of [the] lawsuit" and was an unconstitutional restraint on expression in violation of the First Amendment. (*Id*.) In reaching its decision, the Court stated that "an order limiting communications between the parties and members should be based on a clear record and specific findings that reflect weighing on a limitation and potential interference with the rights of the parties." (*Id*.) "Only such a determination can ensure that the court is furthering, rather than hindering, the policies embodied in the Federal Rules of Civil Procedure, especially Rule 23[.]" (*Id*. at 101-02.) Moreover, the Court required the district court to grant relief

"consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties." (*Id*. at 102.)

Here, the only precertification communication Defendants cite is the LinkedIn communication sent after the filing of the lawsuit. Regarding the LinkedIn communication, as explained *supra* Argument § C.2, Defendants present the Court with *no record of any abuse* that poses any threat to the policies embodied in the Federal Rules Civil of Procedure. Defendants only identify a *single* written communication, to a *single* putative collective member, and do not identify anything that is misleading or deceptive about it, only that Plaintiffs are "overemphasizing" certain words (that are objectively correct statements). Yet, Defendants seek extraordinary relief that severely restricts Plaintiffs' counsel's ability to inform potential class members of the lawsuit and even represent them later on. (*See Gulf Oil* at 101.) In short, Defendants did not create a record warranting any limitation on Plaintiffs' counsel's precertification communications or sanctions of any type.

## E. Defendants' Reliance on *Hamm* is Misplaced.

In light of the fact that Defendants cannot identify any authority supporting their various arguments that Plaintiffs' communications were "deceptive," it instead tries to force this matter into the mold of *Hamm v. TBC Corp*, 345 F. App'x 406 (11th Cir. 2009). However, *Hamm* is easily distinguishable and exposes the meritless nature of Defendants' motion.

In *Hamm*, the defendant in a putative FLSA collective action filed a motion for sanctions against the plaintiffs and their attorney for impermissibly soliciting current employees of the defendant to join the collective action. (*Id.* at 408.) The district court held an evidentiary hearing in which multiple individuals who received the alleged telephonic solicitations testified that an administrative assistant from the plaintiffs' attorney's firm called their personal phone numbers, numbers the plaintiffs' attorney allegedly obtained from the plaintiff, and asked them to join the case. *See id.* Specifically, the evidentiary record reflected that the plaintiffs' attorney's administrative assistant "wanted to know if [they were] interested in recovering some of [their] lost money." *Hamm v. TBC Corp.*, 597 F. Supp. 2d 1338, 1345 (S.D. Fla., Dec. 30, 2008). While the plaintiffs' attorney argued that they made these telephone calls to obtain information to

support their current clients' claims, the witnesses testified that they were never asked if they had ever been forced to work off the clock, or if they had ever witnessed anyone else forced to work off the clock. (*Id.* at 1351.) Based on these findings, the district court held, and the Eleventh Circuit affirmed, that these telephone calls constituted unlawful solicitation, in violation of Florida's Rules of Professional Conduct. *Hamm*, 345 F. App'x at 411-13.

The fundamental difference between *Hamm* and this matter is that counsel in *Hamm* was sanctioned for *direct phone call s*olicitations and the correspondence at issue here was written. The *Hamm* court found that the plaintiffs' attorney's assistant specifically asked the individuals to join the case with little investigation of their individual employment circumstances. *Hamm*, 597 F. Supp. 2d at 1351. Florida Rule of Professional Conduct 4-7.18 (a)(1) specifically prohibits an attorney from contacting a prospective client with whom the attorney has had no prior dealings via telephone when a significant motive for the lawyer's purpose for doing so is the lawyer's pecuniary gain. Written correspondence, even assuming the purpose is for pecuniary gain, is under much less scrutiny. The U.S. Supreme Court opined that "when it comes down to potential for overreaching and undue influence, the mode of communication is all the difference." *Shapero*, 486 U.S. at 476. In analyzing the "modes," the Court recognized in-person solicitations are more invasive than written communications. *Zauderer*, 471 U.S. at 642 ("[A] truthful and non-deceptive letter, no matter how big its type and how much it speculates can never 'shout at the recipient' or 'grasp him by the lapels,' as can a lawyer engaging in a face-to-face solicitation."). The Court recognized that in the case of a written communication—for example, with respect to a newsletter or an electronic written message—the recipient can simply ignore it. *Id*. ("[A] printed advertisement is a means of conveying information about legal services that is more conducive to reflection and exercise of choice on the part of the consumer than is personal solicitation by an attorney."). Here, unlike *Hamm*, a recipient of the Newsletter and the LinkedIn communication can simply ignore them.

Another important distinction between *Hamm* and the instant case is the content of the correspondence. In *Hamm*, the court found that the plaintiffs' attorney's assistant bluntly asked putative collective to join the lawsuit. Here, Plaintiffs' counsel's correspondence does no such

thing. As detailed *supra*, the correspondence cited by Defendants' counsel merely describes the allegations at issue and requests the individuals who received it to contact Plaintiffs' counsel if they so choose. Importantly, Plaintiffs' counsel never directly spoke with any of the individuals who received the correspondence cited by Defendants. (Decl. of Wynne, ¶ 3; Decl. of Giribaldo, ¶ 12). Thus, *Hamm* is inapplicable to the present circumstances.

### F.   The Court Should Sanction Defendants and Their Counsel and Not Permit Defendants to File Any Motions Without First Seeking Leave

Defendants' first motions before the Court are completely meritless and portend future abuses and therefore Defendants and their counsel should be sanctioned. Pursuant to 28 U.S.C. § 1927, the Court may levy sanctions against any party "who so multiplies the proceedings in any case unreasonably and vexatiously" in an amount "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Lahiri v. Universal Music & Video Distribution Corp.*, 606 F3d 1216, 1219 (9th Cir. 2010) (sanctions imposed under both § 1927 *and* court's inherent power); *Jones v. Illinois Central R.R. Co.,* 617 F.3d 843, 856 (6th Cir. 2010) (awarding sanctions because attorney's "reckless" conduct supported finding of unreasonable and vexatious conduct under § 1927). Sanctions are particularly appropriate where "an attorney's actions [] evince a studied disregard of the need for an orderly judicial process [] or add up to a reckless breach of the lawyer's obligations as an officer of the court." *Jensen v. Phillips Screw Co.,* 546 F.3d 59, 64 (1st Cir. 2008) (internal citations committed). Bad faith "is usually a telltale indicium of sanctionable conduct." *Id.* In finding that a party or attorney's conduct is sanctionable, it is within the Court's inherent authority to award attorneys' fees. *See, e.g., Liebowitz v. Bandshell Artist Mgmt.,* 6 F.4th 267, 286-287 (2nd Cir. 2021) ("§1927's 'attorney's fees reasonably incurred' refers to the reasonable value of the work reasonably performed by opposing counsel because of the sanctioned conduct, rather than the fee billed to the client.").

Given that the Court is authorized to sanction Defendants, the Court should utilize its power to do so based on Defendants' filing of two consecutive completely frivolous motions, one of which is for sanctions, which were both filed in "disregard of the need for an orderly

---

17

judicial process," exhibit actions which constitute "a reckless breach of the lawyer's obligations as an officer of the court," and rise to the level of bad faith. Such a finding is particularly appropriate here where Defendants never bothered to meet and confer with Plaintiffs prior to filing. Instead, the instant motion for sanctions is a desperate attempt to defeat a putative collective action at the pleading stage by making inflammatory and wholly unsubstantiated statements about Plaintiffs' counsel. Defendants and their counsel have already abused the motion procedure and will no doubt do so again unless checked.

It is also entirely reasonable and well-within this Court's inherent authority for to impose a sanction on Defendants that they must first seek leave of Court prior to filing any future motion not specifically permitted by Court order —either of any nature whatsoever, or within boundaries imposed in the Court's discretion—in this action. *Accord United States v. Blount*, 523 F. App'x 298, 300 (5th Cir. 2013) ("The district court was permitted to enforce the earlier sanction order requiring Blount to receive leave of court prior to filing further motions"); *see also Lee v. Telecheck Corp.*, No. 12 Civ. 705, 2013 U.S. Dist. LEXIS 143854, at *5-6 (D. Nev. Oct. 4, 2013) (requiring party to obtain leave from the court before submitting any further motions due to the filing of multiple frivolous motions).) Only then will this type of abusive, bad faith litigation be put in check.

Accordingly, Plaintiffs respectfully request that this Court exercise its inherent power to sanction Defendants and their counsel by (i) awarding Plaintiffs' their attorneys' fees in preparing a response to Defendants' motion for sanctions;[5] and (ii) requiring Defendants to request leave of Court before filing any future motion not specifically permitted to be filed by Court order.

## V.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court deny Defendants'

---

[5] Upon the Court's request, Plaintiffs' counsel will provide a declaration regarding the time they have spent opposing this motion so that the Court can properly assess the amount of monetary sanctions to levy against Defendants and their counsel.

motion for sanctions, impose a monetary sanction on Defendants' counsel for advancing this frivolous motion, and require Defendants to seek leave of the Court prior to filing any motion going forward. Upon the Court's request, Plaintiffs' counsel will provide a declaration regarding the time they have spent opposing this motion so that the Court can properly assess the amount of monetary sanctions to levy against Defendants' counsel.

Dated: July 5, 2023                              WYNNE LAW FIRM

                                                By:    */s/Edward J. Wynne*
                                                Edward J. Wynne
                                                80 E. Sir Francis Drake Blvd., Suite 3G
                                                Larkspur, CA 94939
                                                Telephone     (415) 461-6400
                                                Facsimile     (415) 461-3900
                                                ewynne@wynnelawfirm.com

                                                PARDELL, KRUZYK, GIRIBALDO, PLLC
                                                Logan A. Pardell* (admitted *pro hac vice*)
                                                433 Plaza Real, Suite 275
                                                Boca Raton, FL 33432
                                                Telephone     (561) 726-8444
                                                Facsimile     (877) 453-8003
                                                lpardell@pkglegal.com

                                                Counsel for Plaintiffs and the Putative
                                                Collectives