Craig A. Horowitz, State Bar No. 125159
Wayne D. Clayton, State Bar No. 137564
**HOROWITZ & CLAYTON**
A Professional Corporation
300 Corporate Pointe, Suite 355
Culver City, California 90230
Telephone: (310) 442-1122
Facsimile: (310) 442-2612

Attorneys for Defendant,
AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF
NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SABLOWSKY and SUMNER JOHNSON, on behalf of themselves and others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC; <br><br> Defendants. | Case No. 23-cv-02555 <br><br> [Assigned to Hon. Alex G Tse, Dept. A] <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADARES** <br> Time: 10:00 a.m. <br> Date: July 28, 2023 <br> Dept.: A |

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    **PLAINTIFF'S OPPOSITION ONLY FORTIFIES THE NEED FOR THIS COURT TO ISSUE AN ORDER LIMITING PLAINTIFFS' COUNSELS CONTACT WITH PUTATIVE COLLECTIVE ACTION MEMBERS AND OTHER BRANCH MANAGERS.** . . . . . . . . . . . . . . . . . . . 5

    II.    **PLAINTIFFS' REQUEST FOR SANCTIONS IS BASELESS AND SHOULD BE DENIED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

DECLARATION OF JUAN VALLADARES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

**STATUTE**

28 U.S. C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**RULE**

California Rule of Professional Conduct 7.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7

**CASES**

America Unites for Kids v. Rousseau, 985 F.3d 1075 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . 3

Gulf Oil Co. V. Bernard, 341 U.S. 89 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hamm v. TBC Corp, 345 Fed App'x 406 (11th Cir. 2009) . . . . . . . . . . . . . . . . . . . 1, 3, 5, 6

Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989) . . . . . . . . . . . . . . . . . . 1, 2, 4, 5, 6

Jones v. Illinois Central R.R. Co., 617 F.3d 843 (6th Cir. 2010). . . . . . . . . . . . . . . . . . . . . 9

Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216 (9th Cir. 2010) . . . . . . . . 9

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADERES**

- ii -

# INTRODUCTION

In this lawsuit which Plaintiffs have filed as a collective action under the FLSA, Plaintiffs' counsel in an Opposition replete with *ad hominem* attacks and invectives hurled at Defense counsel try to deflect the very serious implications of their solicitations to the integrity of any eventual opt-in process if they obtain conditional certification. Their argument that the "opt-in procedure....has not even begun" (Opp. at 1:18-19) makes our point. This Court exercises heightened "scrupulous" control over collective action proceedings before it, See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) and Plaintiffs' counsel's solicitations of branch managers outside of the collective action process threatens the integrity of not only the opt-in process but the entire lawsuit. See Hamm v. TBC Corp, 345 Fed App'x 406 (11th Cir. 2009).

Remarkably, Plaintiffs' counsel relegate their discussion of the Court of Appeals decision in Hamm to page 15 of their brief. They do so because the key case on solicitation and issue sanctions demonstrates the impropriety of both the written "Newsletter" solicitation sent admittedly to 16 branches (Opp. at 2:25-27) by attorney Wynne and direct LinkedIn messages sent by attorney Giribaldo. For while Plaintiffs' counsel argue that phone calls by a non lawyer assistant is far more egregious than written communications by lawyers seeking pecuniary gain, California Rule of Professional Conduct 7.3(c) defines "solicitation" expressly to include "written" communications.

In the face of hard written evidence of solicitations to employees of different Auto-Chlor entities, Plaintiffs nevertheless proclaim "[t]he Court can conclude that every argument Defendants make is spurious and every fact upon which they rely is either a misrepresentation or an outright lie." (Opp. At 1:14-16.) Notwithstanding the baseless accusations, Plaintiffs' counsel Edward Wynne does not – and cannot – deny that he sent the document titled "WYNNE LAW FIRM AUTO-

CHLOR BRANCH MANAGER WAGE CLAIM NEWSLETTER." (Opp. at 2:25-27; Wynne Decl. ¶ 2.) Indeed, Plaintiffs admit it: "On or about April 27, 2023, counsel for Plaintiffs, Edward J. Wynne, caused to be mailed a written, two-page newsletter . . . to 16 Auto-Chlor branches located throughout California." (Opp. at 2:25-27.) Likewise, Plaintiffs' counsel Bryan Giribaldo admits "[t]he copy of the LinkedIn message attached as Exhibit 2 to Defendants' motion for sanctions . . . is a message sent from my LinkdedIn account to an individual named Marcus Vanderpool on June 7, 2023." (Giribaldo Decl. ¶ 8.) There is absolutely no dispute that Plaintiffs' counsel contacted putative collective action members and other branch managers outside a process supervised by this Court, a plain fact which Plaintiffs' rhetoric cannot change or deflect.

Nevertheless, as with their opposition to Defendants' Motion to Dismiss, Plaintiffs assert a strawman in their opposition stating, "Defendants demand that the Court impose terminating sanctions," without citation. (Opp. At 1:25-26.) Rather than terminating sanctions, Defendants request that Plaintiffs' counsel not be permitted to profit from their improper solicitations and be limited to represent the clients they already have in the lawsuit, as the Eleventh Circuit affirmed in Hamm,[1]

Further highlighting the hollowness of their Opposition, Plaintiffs glibly dismiss the governing nature of the Supreme Court's directive in its decision in Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989), for the district court to "scrupulously" supervise the conduct of "parties and counsel" in communications with putative collective action members. (Opp. at 14:5-17.)

---

[1] Similarly, Plaintiffs' counsel tries to make much of neither he nor his office handwriting "Debbie/FYI" on the envelope addressed to Auto-Chlor System, Branch Manager, 450 Ferguson Drive, Mountain View, CA 94043. (Opp. at 3:3-18; Wynne Decl. ¶ 2,) However, Defendants did not claim he did – rather Defendants' undisputed claim is that Wynne sent his written solicitation to 16 branches in California, plus Defendants' corporate headquarters. (Motion at 5:1-5.)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADERES**

- 2 -

Disregarding that they are attempting to assert a collective action (as in Sperling), they assert that the controlling standard for the court to exercise its inherent power to sanction counsel is under America Unites for Kids v. Rousseau, 985 F.3d 1075 (9th Cir. 2021), a non-collective action lawsuit brought under the Toxic Substances Control Act. In Rousseau, the Ninth Circuit did in fact hold that a contemnor facing criminal penalties for contempt "must be afforded the full protection of a criminal jury trial," a completely different situation than we have here with a civil sanctions proceeding in a collective action suit under the FLSA. While the Ninth Circuit further held in Rousseau that where the "sanctions are strictly limited to compensatory or remedial measures," as they are here, "these criminal-type protections are not required." Id. at 1089-1090. Further, the Court did not consider sanctions under the FLSA in a collective action lawsuit at all, as the Court did in Hamm. As the Court of Appeals case dealing directly with attorney solicitations of potential collective members in an FLSA collective action, Hamm is the authority more applicable here.

Indeed, Plaintiffs' Opposition only raises further questions as to their counsel's solicitations rather than establishing proper contact. Plaintiffs' counsel Mr. Wynne declares that "Neither I, nor anyone at my firm, ever **directly** spoke with any of the individuals who received the Newsletter or the LindedIn communication." (Wynne Decl. ¶ 3, emphasis added.) Likewise, Plaintiffs' counsel Mr. Giribaldo likewise declares in virtually verbatim wording "Neither I, nor anyone at my firm, ever directly spoke with any of the individuals who received the Newsletter (as defined in Plaintiffs' opposition to Defendants' motion for sanctions) or the above-referenced LinkdedIn communication." (Giribaldo Decl. ¶ 13.) It is thus evident that neither Mr. Wynne nor Mr. Giribaldo was able to state simply that they had never spoken to any of the branch managers they had contacted in writing. With both Mr. Wynne and Mr. Giribaldo apparently needing to limit the denial to "directly" speaking raises the reasonable inference that there has been some indirect talking with the branch managers

they solicited in writing.

As to the substance of the solicitations, Plaintiffs' counsel claims "there is nothing misleading or deceptive about Plaintiffs' communications to potential collective members." (Opp. at 1:19-20.) We address these contentions in the substantive discussion below, but suffice it to say that a solicitation spun as a "newsletter" and stating a desire to speak with the individual branch manager about potential rights to overtime pay under California law (in the context of a federal FLSA case) is on its face both deceptive and confusing. (Valladares Decl. ¶ 3.) Indeed, Los Angeles Branch Manager Juan Valladares declares that the envelope addressed to "Branch Manager" contained a pamphlet that looked like an official newsletter. (Id.)

It is concerning that Plaintiffs' counsel treats this motion so cavalierly. The seriousness of the improper communications by Plaintiffs' counsel would have been mitigated if in response to this motion they had agreed to cease any further such solicitations. They did not.[2] To the contrary, Plaintiffs' Opposition makes plain that absent an order from this Court, their attorneys intend to continue to solicit branch managers. (Opp. At 1:23-24 (arguing against "an order limiting Plaintiffs' precertification communications"). Accordingly, the conduct requires this Court's attention particularly in an alleged FLSA collective action where both the statute and Supreme Court authority mandate that the district court "scrupulously" supervise communications with putative class members. See Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 169, 174 (1989).

---

[2] Notwithstanding that neither the Northern District's Local Rules nor this department's Standing Order requires any meet and confer before a sanctions motion like this one, Plaintiffs criticize Defendants' counsel for not meeting and conferring before bringing this motion. (Opp. at 6-8.) Defendants' counsel met and conferred at length with Plaintiffs' counsel before the filing of the Complaint, to no effect. Based on this experience, we believed that meeting and conferring about Plaintiffs' counsel's solicitations to branch managers would be futile. The extremely strident tone of Plaintiffs' Opposition appears to bear out our analysis.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADERES**

- 4 -

Accordingly, Defendants' respectfully submit that given the admitted communications with branch managers of various Auto-Chlor entities, the motion should be granted in full.

## LEGAL ARGUMENT

### I. PLAINTIFF'S OPPOSITION ONLY FORTIFIES THE NEED FOR THIS COURT TO ISSUE AN ORDER LIMITING PLAINTIFFS' COUNSELS CONTACT WITH PUTATIVE COLLECTIVE ACTION MEMBERS AND OTHER BRANCH MANAGERS.

As set forth in our moving papers, the Supreme Court's decision in Sperling held that in collective action case, the District Court should involve itself early in its supervision of the parties and counsel in communications with putative collective action opt-in parties. 493 U.S. at 171, 174. Here, Plaintiffs do not dispute that their counsel communicated with potential collective members outside the supervision of the court in this collective action, although they provide no real information about those communications beyond authenticating the solicitations included as exhibits to Defendants' motion. (Wynne Decl. ¶¶ 2-4; Giribaldo Decl. ¶¶ 6-12.)

Thus, while Plaintiffs assert that "Plaintiffs' counsel [did not] seek to undermine the Fair Labor Standards Act ("FLSA") opt-in procedure" (Opp. at 1:17-19[3]), the admitted direct communications with branch managers inevitably has the effect of interfering with the statutory, Court supervised process. In Hamm, the Court of Appeals described precisely how the solicitations by Plaintiffs' counsel's firm interfered with the opt-in process:

---

[3]The declarations submitted by both Mr. Wynne and Mr. Giribaldo in opposition to the sanctions motion are both conspicuously slight. Although Plaintiffs state in their Opposition that "On or about April 27, 2023, counsel for Plaintiffs, Edward J. Wynne, caused to be mailed a written, two-page newsletter... to 16 Auto-Chlor branches located throughout California," Mr. Wynne does not declare to this. Neither Mr. Wynne nor Mr. Giribaldo declare that they did not seek to interfere with any potential future opt-in process supervised by the Court pursuant to the FLSA. Indeed, neither provide any information as to the scope of the contact they had with Auto-Chlor branch managers in seeking additional members for this collective action. To the contrary, they provide the bare minimum they thought they could get by with to oppose the motion.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADERES**

- 5 -

"The named plaintiffs in this action are from Florida, Georgia, North Carolina, and Pennsylvania. There was no evidence before the magistrate judge as to how the opt-in plaintiffs, which included individuals from Texas, Louisiana, Alabama, Ohio, Maryland, Missouri, Massachusetts, and Illinois, learned about the suit and selected SLG as counsel. Under these circumstances, it was impossible for the magistrate judge to know which, if any, of these clients had also been solicited by SLG. Thus, the magistrate judge recommended narrowly tailored sanctions to permit SLG to continue to represent the named plaintiffs and co-workers of the named plaintiffs (presumably because they most likely learned about SLG and the lawsuit from *411 the named plaintiffs), but prohibited SLG from representing opt-in plaintiffs from other stores. These were reasonable and limited sanctions that balanced the danger that current and future opt-in clients were impermissibly solicited against SLG's interest in representing lawfully-obtained clients." 345 F. App'x at 410-411.[4]

Plaintiffs claim their "counsel was either legitimately investigating Plaintiffs' claims or contacting potential collective members who might have potential claims within the appropriate rules involving contact with those persons." Notably, although Plaintiffs make this claim in their opposition brief, neither Mr. Wynne nor Mr. Giribaldo declare to it in their respective bare-bones declarations. (Wynne Decl. ¶¶ 1-4; Giribaldo Decl. ¶¶ 6-13.) In any event, the claim is false on its face. None of the Defendants employ any branch managers in California. Mr. Wynne sent all his Wynne Branch Manager solicitations to branch managers employed by other, different Auto-Chlor entities.

Plaintiffs try to distinguish Hamm, arguing that the factual scenario there was worse than here because a non-attorney staff person spoke with the potential opt-ins and here Plaintiffs' counsel sent

---

[4] Plaintiffs argue that Sperling, a collective action case, does not apply to this collective action case and instead the Supreme Court's earlier class action case Gulf Oil Co. V. Bernard, 341 U.S. 89 (1981) applies. But Gulf Oil is in no way inconsistent with the direction of Sperling that the District Court scrupulously supervise the conduct of the parties and counsel in collective actions. Indeed, in Hamm, the Court of Appeals specifically noted that the District Court did carefully consider the evidence and made proper findings in balancing interests and issuing its sanctions, in full accord with Gulf Oil 345 F. App'x at 411. It is Plaintiffs here who control most of the information and evidence concerning its counsels' solicitations of branch managers of both Defendant Auto-Chlor entities and other non party California Auto-Chlor entities. As noted, Plaintiffs' counsel has provided meager declarations.

written communications. (Opp. at 16:6-8: "The fundamental difference between *Hamm* and this matter is that counsel in *Hamm* was sanctioned for *direct phone call* solicitations and the correspondence at issue here was written.") However, Rule 7.3(e) expressly defines "solicitation" as "an oral or <u>written</u> targeted communication initiated by or on behalf of the lawyer that is directed to a specific person and that offers to provide, or can reasonably be understood as offering to provide, legal services." Thus, what Plaintiffs claim is "the fundamental difference" is no meaningful difference at all.

Plaintiffs claim in Opposition that "there is nothing misleading or deceptive about Plaintiffs' communications to potential collective members." (Opp. at 1:19-20.) Yet as we showed in our moving papers, the so-called Wynne Law Firm Auto-Chlor Branch Manager Wage Claim Newsletter is deceptive on its face, purporting to be an objective newsletter. (Exh. 1.) Counsel's solicitation was not just a letter stating "you may have rights and contact us if you wish to discuss potential representation." (Exh. 1.) The document is deceptive and intrusive in being sent to individual branch managers presenting itself as a neutral factual communication, (Exh. 1.) The solicitation purports to state California wage and hour law, even though this lawsuit is brought under the FLSA. It deceptively states a four year statute of limitations when the statute under the FLSA is two years. (Exh. 1 at 2.) In addition, as the attached Declaration of Juan Valladares establishes it opened up like a pamphlet and looked like an official newsletter. (Valladares Decl. ¶ 3.)

Similarly, pro hac vice counsel's LinkedIn communication with a former branch manager of Defendant Auto-Chlor System of the Mid South, LLC pro hac also constitutes unlawful written solicitation. Mr. Giribaldo does not and cannot dispute contacting current and former branch managers from multiple Auto-Chlor entities expressly seeking to have them join this "collective action lawsuit against Auto-Chlor." (Exh. 2 at 1.) Although the Pardell, Kruzyk & Giribaldo firm

represented only two Plaintiffs in this action (one in Pennsylvania and the other in Iowa) at the time of the filing of this lawsuit, pro hac vice counsel claimed as of June 7, 2023 (Giribaldo Decl. ¶ 8) to represent "Branch Managers" broadly "nationwide." Counsel also erroneously states that "you may be eligible to join the lawsuit and claim unpaid overtime wages for the past 3 years, plus an additional equal amount of damages" even though Plaintiffs have alleged no facts demonstrating any purported willfulness to extend the standard two year statute of limitations to three years.

Plaintiffs' counsel's solicitations threaten the integrity of this lawsuit by representations about the law and this case outside the supervision of this Court as contemplated by the FLSA. In opposition to an order limiting their communications with potential opt-in former and current branch managers, Plaintiffs' counsel opted to provide declarations with minimal information withholding full information from this court. In order to protect the integrity of any eventual opt-in process if the case is conditionally certified, a Hamm type sanctions order should be issued, limiting counsel's representation to the plaintiffs currently represented.

## II.   PLAINTIFFS' REQUEST FOR SANCTIONS IS BASELESS AND SHOULD BE DENIED.

Plaintiffs' request sanctions against Defendants and their counsel on the baseless allegation that Defendants' 12(b)(6) motion to dismiss and this motion for sanctions are "completely meritless" pursuant to 28 U.S. C. § 1927 and the court's inherent power. (Opp. at 17-18.)  Section 1927 provides:

> "Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatioiusly may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Defendants' two motions here do not come close to implicating Section 1927. Defendants' Motion to Dismiss is based on the insufficiency of the factual allegations of the Complaint based on relevant,

applicable authority. Similarly, this motion for sanctions is brought based on undisputed written communications with current and former branch managers employed by various Auto-Chlor entities, some Defendants to this lawsuit and some third parties. This motion too is brought under relevant, applicable authority. None of the cases cited by Plaintiffs come close to the facts and law before this Court on Defendants' two well taken motions. For example, in Lahiri v. Universal Music & Video Distribution Corp., 606 F.3d 1216 (9th Cir. 2010) (Opp. at 17:12-13), the Ninth Circuit affirmed the district court's imposition of sanctions on Plaintiff's counsel who pursued a frivolous lawsuit for five years following the granting of summary judgment. Similarly, in Jones v. Illinois Central R.R. Co., 617 F.3d 843, 856 (6th Cir. 2010), the Sixth Circuit affirmed the District Court's award of sanction where "someone from Defendant's legal team told Mr. Grace that he was not to testify that he had stayed in a hotel paid for by Defendant.") Plainly it is for the Court, not the parties, to decide these motions. Nevertheless, whether Defendants prevail on its motions, the record is clear that they were brought on reasonable grounds in good faith. Plaintiffs's request for sanctions should be denied.

## CONCLUSION

Plaintiffs' Opposition here is long on rhetoric but short on substantive facts, and the declarations of counsel even more unilluminating. Full of accusation and *ad hominem* attack, the Opposition fails to explain the scope of the unauthorized communications with branch managers in California and (evidently) across the continent. (Wynne Decl., Giribaldo Decl.) As demonstrated above, Plaintiffs' Opposition and the declarations in support thereof fail to rebut the plain facts of the **undisputed** written solicitations by Plaintiffs' counsel, outside the confines of the supervision of this Court of any potential future opt-in process if (and only if) the case is conditionally certified as a collective action. Accordingly, Defendants respectfully submit that the motion should be granted in its entirety, counsel limited to representing the two existing named plaintiffs, be barred

from any further solicitation and be ordered to reimburse Defendants $2,500 in reasonable attorneys fees. At a minimum, the Court should issue an order prohibiting any future solicitation by Plaintiffs' counsel to putative collection action members.

DATED: July 11, 2023                    HOROWITZ & CLAYTON

BY: *[signature]*
CRAIG A. HOROWITZ
Attorneys for Defendants,
AUTO-CHLOR SYSTEM, LLC, AUTO-CHLOR SYSTEM OF NEW YORK CITY, INC., and AUTO-CHLOR SYSTEM OF THE MID SOUTH, LLC

## DECLARATION OF JUAN VALLADARES

I, Juan Valladares, declare and state as follows:

1. If called as a witness in this action, I would testify to the facts below. I have personal knowledge of these facts.

2. I began working for an Auto-Chlor entity on June 27, 2005. From approximately 2006-2015, I worked as a Sales Service Representative ("SSR") in the LA branch. I had a daily route, serviced dishwashing machines in the field and sold detergents. I was paid overtime. I then became a Route Supervisor and was paid overtime. Since 2018, I have been Branch Manager of the Los Angeles branch.

3. I received an envelope addressed to Branch Manager several weeks ago. That is all I recall seeing on the envelope. I opened the envelope and it looked like an official newsletter. It opened the up like a pamphlet. I believe a lawyer was trying to get me to join a lawsuit.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 10 day of July, 2023, at Los Angeles County, California.

_____
JUAN VALLADARES

# PROOF OF SERVICE

I am employed in the County of **Los Angeles**, State of California. I am over the age of 18 years and not a party to the within action; my business address is **300 Corporate Pointe, Suite 355, Culver City, California 90230.**

On the below-stated date, I served the foregoing document described as **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ISSUE AND MONETARY SANCTIONS FOR UNLAWFUL SOLICITATION OF FLSA PUTATIVE BRANCH MANAGER COLLECTIVE ACTION MEMBERS BY PLAINTIFFS' COUNSEL; DECLARATIONS OF JUAN VALLADARES** on all interested parties in this action.

☒ by placing ☐ *the original* ☒ *a true copy* thereof in a sealed envelope addressed as follows:

☐ BY MAIL TO:

☐ As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date is more than one day after the date of deposit for mailing in affidavit.

☐ BY PERSONAL SERVICE I caused such envelope to be hand delivered to the offices of the following addressee:

☐ BY FACSIMILE: I personally sent such document via fax to the offices of the addressee, with **confirming copy** by **First Class Mail** as follows:

☒ BY E-MAIL: I personally sent such document via e-mail to the addressee as follows:

Logal A. Pardell: lpardell@pkglegal.com

Edward J. Wynne: ewynne@wynnelawfirm.com

Declaration

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed July 11, 2023, at Los Angeles County, California.

ELDA GONZALEZ