Edward J. Wynne   (SBN 165819)
ewynne@wynnelawfirm.com
George Nemiroff (SBN 262058)
gnemiroff@wynnelawfirm.com
WYNNE LAW FIRM
80 E. Sir Francis Drake Blvd., Ste. 3G
Larkspur, CA 94939
Telephone   (415) 461-6400
Facsimile   (415) 461-3900

Logan A. Pardell* (admitted *pro hac vice*)
lpardell@pkglegal.com
PARDELL, KRUZYK & GIRIBALDO, PLLC
433 Plaza Real, Suite 275
Boca Raton, FL 33432
Telephone (561) 447-8444
Facsimile (877) 453-8003

*Counsel for Plaintiffs and the Putative Collective*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Mark   Sablowsky and Sumner Johnson, *on behalf of themselves and others similarly situated*,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>Auto-Chlor System, LLC, Auto-Chlor System of New York City, Inc., and Auto-Chlor System of the Mid South, LLC<br><br>　　　　　　　　　Defendants. | ) Case No. 3:23-cv-02555-AGT<br>)<br>)<br>) **PLAINTIFFS' NOTICE OF MOTION**<br>) **AND MOTION FOR CONDITIONAL**<br>) **FLSA COLLECTIVE ACTION**<br>) **CERTIFICATION AND ISSUANCE OF**<br>) **NOTICE**<br>)<br>) Time:10:00 a.m.<br>) Date: September 8, 2023<br>) Dept. A, 15th Floor<br>) Hon. Alex G. Tse |

# TABLE OF CONTENTS

NOTICE OF MOTION................................................................................................1

MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND
ISSUANCE OF NOTICE ...........................................................................................2

I.    INTRODUCTION ............................................................................................2

II.   STATEMENT OF ISSUES ..............................................................................3

III.  PROCEDURAL BACKGROUND ..................................................................3

IV.  STATEMENT OF FACTS ...............................................................................3

V.   ARGUMENT....................................................................................................9

   A.   Conditional FLSA Certification is Appropriate in this Matter. ...................9

   1. Collective Action Certification is a Two-Stage Process................................9

   2. The Standard for Conditional Certification is Considerably Less Stringent than in
   Rule 23 Class Certification. ...........................................................................11

   3. Certification during the First Stage Requires Only a Minimal Evidentiary
   Showing. .........................................................................................................11

   4. Plaintiffs Satisfy the Lenient "Similarly Situated" Standard for Notice at this Early
   Stage of the Litigation....................................................................................13

   5. The Court Should Authorize Notice to BMs Who Worked at Any Auto-Chlor
   System Branch, Regardless of Whether Defendants Claim Auto-Chlor System Did
   Not Directly Employ BMs. .............................................................................15

      i. The Issue of Whether Auto-Chlor System, LLC, is a "Joint Employer" is a Merits-
      Related Issue Reserved for the Second Stage. ............................................15

      ii. ..... Even if the Court Considers the Issue of Whether Auto-Chlor System is a "Joint
      Employer" at this Stage, Plaintiffs Sufficiently Show Auto-Chlor System is an
      Employer.......................................................................................................16

   B.   Plaintiffs' Proposed Notice Is the Best Notice Practicable.......................18

   1. Plaintiffs' Notice Clearly Communicates BMs' Rights and Options. ...........19

   2. Plaintiffs' Notice Plan Ensures the Notice Effectively Reaches BMs............20

VI.  CONCLUSION ..............................................................................................22

1

# TABLE OF AUTHORITIES

2

**Cases**

3 *Aguilar v. Complete Landsculpture, Inc.*, No. 04 Civ. 0776, 2004 U.S. Dist. LEXIS 20265
    (N.D. Tex. Oct. 7, 2004) ....................................................................................................16

4 *Alvarez v. Farmers Ins. Exch.*, No. 14 Civ. 00574, 2014 U.S. Dist. LEXIS 133138 (N.D. Cal.
5    Sep. 19, 2014) ..................................................................................................................14

*Arrendondo v. Delano Farms Co.*, No. 09 Civ. 1247, 2011 U.S. Dist. LEXIS 44134 (E.D.
6    Cal. Apr. 19, 2011) ...........................................................................................................19

7 *Ash v. Bayside Sols., Inc.*, No. 14 Civ. 02183, 2015 U.S. Dist. LEXIS 11323 (N.D. Cal. Jan.
    30, 2015) ...........................................................................................................................15

8 *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) .....................................19

*Bejar v. SOS Int'l LLC*, No. 16 Civ. 09000, 2018 U.S. Dist. LEXIS 228775 (C.D. Cal. Mar.
9    13, 2018) ...........................................................................................................................15

10 *Benedict v. Hewlett-Packard Company*, No. 13 Civ. 0119, 2014 U.S. Dist. LEXIS 18594
    (N.D. Cal. Feb. 13, 2014).................................................................................................12

11 *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) ...........................17

*Bowser v. Empyrean Servs.*, LLC, 324 F.R.D. 346 (W.D. Pa. 2018) ......................................15

12 *Brewer v. Gen. Nutrition Corp.*, No. 11 Civ. 03587, 2013 U.S. Dist. LEXIS 2948 (N.D. Cal.
13    Jan. 7, 2013)......................................................................................................................11

*Brown v. Citicorp Credit Servs.*, No. 12 Civ. 62, 2013 U.S. Dist. LEXIS 59616 (D. Idaho
14    Apr. 24, 2013) .......................................................................................................12, 14, 17

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018).................................... passim

15 *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003)..............................................17

*Coates v. Farmers Grp., Inc.*, No. 15 Civ. 01913, 2015 U.S. Dist. LEXIS 165817 (N.D. Cal.
16    Dec. 9, 2015)...............................................................................................................11, 13

17 *Darling v. Dignity Health*, No. 20 Civ. 06043, 2021 U.S. Dist. LEXIS 135262 (N.D. Cal.
    July 20, 2021).....................................................................................................................9

18 *Dominguez v. Better Mortg. Corp.*, No. 20 Civ. 01784, 2022 U.S. Dist. LEXIS 198305 (C.D.
19    Cal. Oct. 24, 2022) ...............................................................................................20, 21, 22

*Dudley v. TrueCoverage LLC*, No. 18 Civ. 3760, 2018 U.S. Dist. LEXIS 225618 (C.D. Cal.
20    Sep. 28, 2018) ......................................................................................................20, 21, 22

*Feaver v. Kaiser Found. Health Plan, Inc.*, No. 15 Civ. 00890, 2016 U.S. Dist. LEXIS 9778
21    (N.D. Cal. Jan. 27, 2016) ..............................................................................................9, 11

22 *Flores v. Velocity Express, Inc.*, No. 12 Civ. 05790, 2013 U.S. Dist. LEXIS 77821 (N.D. Cal.
    June 2, 2013).........................................................................................................12, 13, 18

23 *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523 (2013)................................................9

*Gomez v. H & R Gunlund Ranches, Inc.*, No. 10 Civ. 1163, 2010 U.S. Dist. LEXIS 137736
24    (E.D. Cal. Dec. 16, 2010).................................................................................................13

25 *Guilbaud v. Sprint/United Mgmt. Co.*, No. 13 Civ. 04357, 2014 U.S. Dist. LEXIS 141109
    (N.D. Cal. Oct. 3, 2014).........................................................................................3, 11, 12

26 *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835 (N.D. Cal. 2010)....................................13

*Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20 Civ. 01093, 2020 U.S. Dist. LEXIS 235832
27    (N.D. Cal. Dec. 14, 2020) ................................................................................................12

28 *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989).......................................1, 9, 18, 21

*Kerin v. Toms King*, No. 19 Civ. 01470, 2021 U.S. Dist. LEXIS 58933 (W.D. Pa. Mar. 29, 2021) ................................................................................................................................15

*Kucher v. Domino's Pizza, Inc.*, No. 16 Civ. 2492, 2017 U.S. Dist. LEXIS 222812 (S.D.N.Y. Feb. 13, 2017) ........................................................................................................................16

*Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462 (N.D. Cal. 2004)................................10, 13

*Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605 (S.D.N.Y. Feb. 5, 2016) ......12

*Litty v. Merrill Lynch & Co.*, No. 14 Civ. 0425, 2014 U.S. Dist. LEXIS 160447 (C.D. Cal. Aug. 4, 2014) .........................................................................................................................9

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ......................9, 19

*Manning v. Goldbelt Falcon, LLC*, No. 08 Civ. 3427, 2010 U.S. Dist. LEXIS 104029 (D.N.J. Sep. 29, 2010) ....................................................................................................................15

*Monroe v. Hayward Unified Sch. Dist.*, No. 22 Civ. 04489, 2023 U.S. Dist. LEXIS 41279 (N.D. Cal. Mar. 12, 2023) .....................................................................................................17

*Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*, No. 19 Civ. 07087, 2021 U.S. Dist. LEXIS 87268 (N.D. Cal. May 5, 2021) ....................................................................................11, 13

*Nadreau v. Lush Cosmetics, Inc.*, No. 10 Civ. 298, 2011 U.S. Dist. LEXIS 160487 (M.D. Fla. Jan. 28, 2011) ....................................................................................................................18

*Otey v. CrowdFlower, Inc.*, No. 12 Civ. 05524, 2013 U.S. Dist. LEXIS 122007 (N.D. Cal. Aug. 27, 2013) ...................................................................................................................21

*Phillips v. Cty. of Riverside*, No. 19 Civ. 1231, 2020 U.S. Dist. LEXIS 259345 (C.D. Cal. Mar. 2, 2020) .......................................................................................................................22

*Randall v. Integrated Commun. Serv.*, No. C20-5438JLR, 2021 U.S. Dist. LEXIS 107424 (W.D. Wash. June 8, 2021) ....................................................................................................21

*Reed v. Bridge Diagnostics, LLC,* No. 21 Civ. 01409, 2023 U.S. Dist. LEXIS 130595 (C.D. Cal. June 13, 2023) ...................................................................................................................9

*Roberts v. Sidwell Air Freight Inc.*, No. 21 Civ. 5912, 2022 U.S. Dist. LEXIS 207301 (W.D. Wash. Nov. 15, 2022) ...................................................................................................16

*Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025 (N.D. Cal. 2017)................................................12

*Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) ............................................2, 11

*Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268 (N.D. Cal. 2015)................................10, 12

*Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013)................................................18

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (Mar. 22, 2016)................................10

*Villa v. United Site Servs. Of Cal., Inc.*, No. 12 Civ. 00318, 2012 U.S. Dist. LEXIS 162922 (N.D. Cal. Nov. 13, 2012)......................................................................................................13

*Wellens v. Daiichi Sankyo Inc.*, No. 13 Civ. 00581, 2014 U.S. Dist. LEXIS 50727 (N.D. Cal. Apr. 11, 2014) .....................................................................................................................2, 13

*Woods v. New York Life Ins. Co.*, 686 F.2d 578 (7th Cir. 1982) ............................................19

*Woods v. Vector Mktg. Corp.*, No. 14 Civ. 0264, 2015 U.S. Dist. LEXIS 32370 (N.D. Cal. Mar. 16, 2015)........................................................................................................................9, 21

*Zaborowski v. MHN Gov't Servs., Inc.*, No. 12 Civ. 05109, 2013 U.S. Dist. LEXIS 59492 (N.D. Cal. Apr. 25, 2013) ................................................................................10, 11, 19

**Statutes**

29 U.S.C. § 216.................................................................................... 1, 9, 13, 21

## NOTICE OF MOTION

PLEASE TAKE NOTICE that the matter may be heard at 10:00 a.m. on September 8, 2023, before the Honorable Alex G. Tse in Courtroom A of this Court, located at 450 Golden Gate Avenue, 17th floor, San Francisco, California, as Plaintiffs Mark Sablowsky and Sumner Johnson (collectively, "Plaintiffs") will, and hereby do, move this Court to conditionally certify this collective action, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989). Plaintiffs make this motion on the grounds that there exist many individuals similarly situated to Plaintiffs, justifying proceeding on a collective action basis. This motion is supported by: (1) this notice; (2) the following memorandum in support of the motion; (3) the declarations of Plaintiffs Mark Sablowsky and Sumner Johnson, and Opt-Ins Jeff Brown, Marcus Brown, and David Vindheim; (4) all matters of which the Court may take judicial notice; and (5) such other documentary and oral evidence or argument as may be presented to the Court at the hearing on this motion.

For the reasons set forth below, Plaintiffs respectfully request that the Court: (1) conditionally certify the Proposed Collective; (2) direct Defendants Auto-Chlor System, LLC ("Auto-Chlor System"), Auto-Chlor System of New York City, Inc. ("Auto-Chlor NYC"), and Auto-Chlor System of the Mid South, LLC ("Auto-Chlor Mid South," and collectively, "Defendants") to produce to Plaintiffs a class list containing, for the Proposed Collective members, their full names, addresses, non-work telephone numbers, email addresses, and the dates and branch locations where they worked as exempt-classified Branch Managers; (3) direct the dissemination of notice of the pendency of the action by mail, email, and text message using the proposed Notice; (4) permit members of the Proposed Collective to file Consent to Join Forms, by mail, fax, e-mail, or website submission, until 90 days after the date of Plaintiffs' mailing of notice to the class; and (5) permit the dissemination of a reminder postcard by mail, email, and text message.

## MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION AND ISSUANCE OF NOTICE

### I.    INTRODUCTION

Plaintiffs request conditional FLSA collective action certification of a group of exempt-classified Branch Managers, and employees in similar positions with different job titles, (collectively, "BMs") who worked at any of Defendants' (e.g., "Auto-Chlor System") branch locations nationwide at any time from May 25, 2020 (i.e., three years prior to the filing of the Complaint (Dkt. 1)) through the present (the "Proposed Collective"). Plaintiffs claim that they and other similarly situated BMs have been misclassified as exempt employees and therefore wrongfully denied overtime pay for the significant overtime hours that they worked as BMs. As more fully detailed herein, Plaintiffs and other BMs were misclassified because the realistic expectation of the branch manager job is to primarily perform non-exempt manual work and customer service job duties such as servicing, installing, and/or rebuilding dishwashers; visiting with clients to collect payment and drop off dishwasher chemicals; counting inventory; and loading and unloading trucks. BMs spend a vast majority of their workdays performing these non-exempt duties, so they are not exempt executives or administrators.

Although the first stage notice standard for FLSA certification is "fairly lenient" and requires only a "minimal showing," Plaintiffs present detailed allegations, publicly available information published by Defendants, as well as five declarations (from both Plaintiffs and three Opt-In Plaintiffs) to show that all BMs are similarly situated as victims of Defendants' unlawful policy of misclassifying BMs as exempt. *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 422 (N.D. Cal. 2015); *Wellens v. Daiichi Sankyo Inc.*, No. 13 Civ. 00581, 2014 U.S. Dist. LEXIS 50727, at *8 (N.D. Cal. Apr. 11, 2014) (same). This evidence satisfies the low bar for disseminating FLSA notice to the Proposed Collective.

Based on the evidentiary showing herein, Plaintiffs satisfy this "light" burden, and therefore request that the Court order notice to all BMs, so that each can make his or her individual decision whether to opt in to pursue claims as part of a collective. *See Guilbaud v. Sprint/United Mgmt. Co.*, No. 13 Civ. 04357, 2014 U.S. Dist. LEXIS 141109, at *4 (N.D. Cal.

Oct. 3, 2014) ("Although certification is not automatic, the plaintiffs' burden is nonetheless a light one." (citations omitted)).

## II.   STATEMENT OF ISSUES

1. Have Plaintiffs made a modest factual showing to meet their lenient burden to warrant conditional certification of the Proposed Collective?

2. Is the form and substance of Plaintiffs' proposed notice appropriate?

## III.   PROCEDURAL BACKGROUND

On May 24, 2023, Plaintiffs filed their Collective Action Complaint. Dkt. 1. After Plaintiffs filed their Complaint, three additional "Opt-Ins" filed consents to join this lawsuit. Dkts. 22, 34. Defendants filed a motion to dismiss (Dkt. 9), which the Court subsequently denied. Dkt. 30. Plaintiffs now file this motion for conditional certification not only before discovery has begun, but before Defendants have filed their answer and before the parties have even conducted their Rule 26 conference.

## IV.   STATEMENT OF FACTS

### A.  Plaintiffs and Opt-Ins.

Plaintiff Sablowsky and Opt-Ins J. Bown and Vindheim worked as BMs for Auto-Chlor NYC and Auto-Chlor System at branches located in Pennsylvania, Connecticut, and Massachusetts, respectively.[1] Plaintiff Johnson and Opt-In M. Brown worked as BMs for Auto-Chlor Mid South and Auto-Chlor System at branches located in Ohio and Iowa, respectively.[2] As such, Plaintiffs and Opt-in Plaintiffs collectively worked in five different Auto-Chlor System branches in five different states. Moreover, through their declarations, Plaintiffs and

---

[1]      Ex. 1, Declaration of Mark Sablowsky ("Sablowsky Decl.") at ¶ 2; Ex. 2, Declaration of Jeff Brown ("J. Brown Decl.") at ¶ 2; Ex. 3, Declaration of Daniel Vindheim ("Vindheim Decl.") at ¶ 2.

[2]      Ex. 4, Declaration of Sumner Johnson ("Johnson Decl.") at ¶ 2; Ex. 5, Declaration of Marcus Brown ("M. Brown Decl.") at ¶ 2.

1   Opt-Ins identify 13 other similarly situated BMs who worked at least 12 additional branches

2   in at least 7 additional states.[3]

3   **B. All BMs Have the Same or Similar Primary Job Duties.**

4   Regardless of where they work, BMs spend the vast majority of their work time

5   performing non-exempt duties, including: servicing, installing, and/or rebuilding dishwashers;

6   visiting with clients to collect payment and drop off dishwasher chemicals; counting inventory;

7   and loading and unloading trucks.[4] BMs spend most of their day essentially performing the

8   same job functions as route drivers that are paid hourly.[5] Regardless of where they work, BMs'

9   primary duties do not involve the management of other employees or sales.[6] Accordingly, their

10  primary duties do not include hiring, firing, disciplining, or promoting other employees, or

11  setting their rates of pay.[7] To the extent they are involved in these processes at all, BMs'

12  involvement is minimal and they do not have the ability to ultimately make personnel

13  decisions.[8] This is because hiring, firing, discipline, and setting rates of pay are the ultimate

14  responsibility of the Regional Managers ("RMs"), Regional Vice Presidents ("RVPs"), or

15  human resources—not BMs—and BMs' recommendations with respect to these decisions, to

16  the extent they are even solicited, are not given significant weight.[9] BMs also do not set branch

17

18

19  [3]     Sablowsky Decl. at ¶ 22; Johnson Decl. at ¶ 23; J. Brown Decl. at ¶ 22; M. Brown Decl.
20  at ¶ 22; Vindheim Decl. at ¶ 22.

21  [4]     Sablowsky Decl. at ¶ 10; Johnson Decl. at ¶ 11; J. Brown Decl. at ¶ 10; M. Brown Decl.
    at ¶ 9; Vindheim Decl. at ¶ 9.

22  [5]     *Id.*

23  [6]     Sablowsky Decl. at ¶¶ 10-15; Johnson Decl. at ¶¶ 11-15; J. Brown Decl. at ¶¶ 10-15;
24  M. Brown Decl. at ¶¶ 9-14; Vindheim Decl. at ¶¶ 9-14.

25  [7]     *Id.*

26  [8]     Sablowsky Decl. at ¶¶ 13-14; Johnson Decl. at ¶ 14; J. Brown Decl. at ¶¶ 13-14; M.
27  Brown Decl. at ¶¶ 12-13; Vindheim Decl. at ¶¶ 12-13.

28  [9]     Sablowsky Decl. at ¶¶ 12-15; Johnson Decl. at ¶¶ 13-15; J. Brown Decl. at ¶¶ 12-15;
    M. Brown Decl. at ¶¶ 11-14; Vindheim Decl. at ¶¶ 11-14.

NOTICE OF MOTION AND MOTION FOR CONDITIONAL FLSA CERTIFICATION
AND ISSUANCE OF NOTICE - 3:23-cv-02555-AGT - 4

policies or procedures, as those policies and procedures are communicated to BMs by corporate and the RM and RVP.[10]

### C. Defendants Require BMs to Perform Overtime Work Without Paying BMs Overtime Compensation.

BMs regularly work significantly more than 40 hours per week.[11] Plaintiffs testified that, due to the fact that Auto-Chlor System requires that each customer is visited at least once every 28 days, BMs often spent a significant portion of their workday "running routes"—meaning driving to meet with customers to service their dishwashers, deliver supplies, and pick up payment. Ex. 6 (Composite Exhibit of Website Pages) at 007 ("Auto-Chlor is unique in providing very thorough and comprehensive preventive maintenance. Service is provided every 28 days. Our 'Route Service' provides dish machine preventative maintenance, repairs, and cleaning as well as staff training and development.").[12] BMs must spend significant hours doing so because of the number customers Auto-Chlor System has and how geographically dispersed they are in relation to the respective branches, coupled with the fact that Auto-Chlor System does not staff a sufficient number of route drivers to service these customers.[13] Given this full docket of customers to service, BMs are rarely able to take a bona fide, uninterrupted meal break of 20 minutes of more.[14] In addition, BMs are expected to work "on call," during

---

[10] Sablowsky Decl. at ¶¶ 12, 15; Johnson Decl. at ¶¶ 13, 15; J. Brown Decl. at ¶¶ 12, 15; M. Brown Decl. at ¶¶ 11, 14; Vindheim Decl. at ¶¶ 11, 14.

[11]    Sablowsky Decl. at ¶ 9 (approximately 50 hours per week, excluding on-call work); Johnson Decl. at ¶ 10 (approximately 50 to 65 hours per week, excluding on-call work); J. Brown Decl. at ¶ 9 (approximately 55 to 65 hours per week, excluding on-call work); M. Brown Decl. at ¶ 8 (approximately 50 to 55 hours per week, excluding on-call work); Vindheim Decl. at ¶ 8 (approximately 55 to 65 hours per week, excluding on-call work).

[12]    Sablowsky Decl. at ¶¶ 10-11; Johnson Decl. at ¶¶ 11-12; J. Brown Decl. at ¶¶ 10-11; M. Brown Decl. at ¶¶ 9-10; Vindheim Decl. at ¶¶ 9-10.

[13]    Sablowsky Decl. at ¶ 11; Johnson Decl. at ¶ 12; J. Brown Decl. at ¶ 11; M. Brown Decl. at ¶ 10; Vindheim Decl. at ¶ 10.

[14]    Sablowsky Decl. at ¶ 6; Johnson Decl. at ¶ 7; J. Brown Decl. at ¶ 6; M. Brown Decl. at ¶ 6; Vindheim Decl. at ¶ 5.

which time they are expected to respond to emergency calls immediately and are therefore required to be stationed only at their homes or the branch and are not permitted to consume alcohol.[15] Defendants require BMs to work on call more often than the hourly-paid route drivers to whom Defendants must pay overtime because it is cheaper for them to do so.[16] Thus, especially when factoring in "on call" work, BMs work significant overtime hours each week.[17]

### D.  Auto-Chlor System Employs BMs.

Despite Defendants' contentions to the contrary, Auto-Chlor System is an employer of all BMs nationwide. Plaintiffs make specific allegations in their Complaint regarding Auto-Chlor System's involvement and control over the Proposed Collective's employment, and even at this early stage of litigation in which no discovery has taken place, Plaintiffs are able to provide evidence to support these allegations. *See* Compl. at ¶¶ 14-43. Plaintiffs allege that all Defendants employ or jointly employ them and the Proposed Collective as Auto-Chlor System owns Auto-Chlor NYC and Auto-Chlor Mid South, among other similar subsidiaries, as part of a top-down operation, with Defendants sharing the same management and executive offices. *Id.* ¶¶ 14-16, 23, 26-29, 31-35; *see also* Dkt. 16, Ex. 1 at ¶¶ 2-3 (declaration of Ed Ivy, "President" of all three Defendants, who testifies that Defendants all share the same administrative office in Mountain View, California); Ex. 7 (Corporate Disclosure Statement filed by Defendants in *Gonzalez v. Auto-Chlor System of New York City, Inc., et al.*) (admitting that Auto-Chlor NYC and Auto-Chlor Mid South are subsidiaries of Auto-Chlor System).

Defendants all lease commercial dishwashers and related supplies under the brand name "Auto-Chlor System," and Auto-Chlor System's website does not differentiate between different Auto-Chlor subsidiaries, instead promoting Auto-Chlor System's services as one common business enterprise across the states in which it does business. *Id.* at ¶¶ 17, 25; Ex. 6

---

[15]     Sablowsky Decl. at ¶ 8; Johnson Decl. at ¶ 9; J. Brown Decl. at ¶ 8; M. Brown Decl. at ¶ 7; Vindheim Decl. at ¶ 7.

[16]     *Id.*

[17]     Sablowsky Decl. at ¶ 9; Johnson Decl. at ¶ 10; J. Brown Decl. at ¶ 9; M. Brown Decl. at ¶ 8; Vindheim Decl. at ¶ 8.

(Composite Exhibit of Website Pages) at 016-17 ("We are excited to announce the opening of our newest branch in Salt Lake City, Utah! This newest Auto-Chlor System location will service customers throughout greater Salt Lake City and the Northern Utah area"). All trucks driven by BMs and other employees nationwide have the same Auto-Chlor System logo affixed to them.[18]

Not only do Defendants represent themselves as a common enterprise to the public, but they do so to their employees as well. In fact, their website states that "Auto-Chlor is a national leader in water, hygiene and infection prevention solutions and services…[and] our 2,500 plus associates help customers optimize the cleanliness, efficiency, safety, sustainability and profitability of their operations in more than 140 local markets within the [U]nited [S]tates." Ex. 6 (Composite Exhibit of Website Pages) at 023. Defendants' website also has had numerous postings corroborating Plaintiffs' allegations that Auto-Chlor System employs BMs. *See, e.g.*, *id.* at 33-42 ("Auto-Chlor System announces the opening of a new service and distribution center in Frederick, MD . . . Chris Homyer, Auto-Chlor Frederick – Branch Manager, is excited with the ability to provide service to customers in Frederick and the surrounding area."), ("Auto-Chlor System announces the opening of a new service location in Boise, ID . . . the Boise branch will have a complete staff of Auto-Chlor trained personnel.") Offer letters corroborate that BMs are employed by Auto-Chlor. *See* Ex. 8 (Johnson Offer Letter) (offer letter from Auto-Chlor System advising "Auto-Chlor System is an At-Will employer"). Furthermore, in a video Defendants posted on their website and YouTube page, California-based BM, Juan Valladares, stated that if he wanted to transfer to a different state in the United States, he could do so "without skipping a beat."[19] In another of Defendants'

---

[18]     Sablowsky Decl. at ¶ 20; Johnson Decl. at ¶ 20; J. Brown Decl. at ¶ 20; M. Brown Decl. at ¶ 19; Vindheim Decl. at ¶ 19.

[19]     https://www.youtube.com/watch?v=xFBTurBOhW4&t=28s (last visited July 31, 2023).

videos, BM Marcus Vanderpool[20] stated that during his training, he traveled throughout the United States "to see all the best practices from the most successful branches of Auto-Chlor," and that this shaped his approach to his job as a BM.[21] This evidence shows that all Auto-Chlor System branches operate similarly.

Additionally, all Auto-Chlor employees use the same email address with the "@autochlor.com" domain.[22] All Auto-Chlor employees are also subject the same employee handbook and policies and procedures.[23] These are just some of many unifying characteristics of all of Defendants' operations.

Moreover, Auto-Chlor System exerts significant control over the employment of Plaintiffs and the Proposed Collective. Defendants maintain a centralized human resources department in their Mountain View, California corporate office.[24] Prospective applicants apply for jobs on Auto-Chlor System's website. Ex. 6 (Composite Exhibit of Website Pages) at 023-32.[25] Auto-Chlor System's employee handbook, which is applicable to all Auto-Chlor System employees, was created in its corporate office.[26] Auto-Chlor System has or had the ability to hire and fire Plaintiffs and the Proposed Collective, and Auto-Chlor System ultimately controls

---

[20]    Mr. Vanderpool was the BM who received the LinkedIn message that was part of the focus of Defendants' motion for sanctions, Dkt. 16, which this Court recently denied. Dkt. 32.

[21]    https://www.youtube.com/watch?v=fb8qdkVN_r8 (last visited July 31, 2023).

[22]    Sablowsky Decl. at ¶ 18; Johnson Decl. at ¶ 18; J. Brown Decl. at ¶ 18; M. Brown Decl. at ¶ 17; Vindheim Decl. at ¶ 17.

[23]    Sablowsky Decl. at ¶ 19; Johnson Decl. at ¶ 19; J. Brown Decl. at ¶ 19; M. Brown Decl. at ¶ 18; Vindheim Decl. at ¶ 18.

[24]    Sablowsky Decl. at ¶¶ 19, 21; Johnson Decl. at ¶¶ 19, 21; J. Brown Decl. at ¶¶ 19, 21; M. Brown Decl. at ¶¶ 18, 20; Vindheim Decl. at ¶¶ 18, 20.

[25]    Sablowsky Decl. at ¶ 21; J. Brown Decl. at ¶ 21; M. Brown Decl. at ¶ 20; Vindheim Decl. at ¶ 20.

[26]    Sablowsky Decl. at ¶ 19; Johnson Decl. at ¶ 19; J. Brown Decl. at ¶ 19; M. Brown Decl. at ¶ 18; Vindheim Decl. at ¶ 18.

the nature of their employment.[27] Employee records are maintained at Auto-Chlor System's corporate office.[28]

## V.   ARGUMENT

### A.  Conditional FLSA Certification is Appropriate in this Matter.

Under the FLSA, employees may bring a collective action on behalf of themselves and other "similarly situated" employees. *Darling v. Dignity Health*, No. 20 Civ. 06043, 2021 U.S. Dist. LEXIS 135262, at *7 (N.D. Cal. July 20, 2021) (citing 29 U.S.C. § 216(b)). Thus, under the FLSA, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Id.* (quoting *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018)). This procedure promotes "efficient resolution of common claims and lower individual costs associated with litigation." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1531 (2013); *see also Hoffmann-La Roche*, 493 U.S. at 170 (collective actions enable the "efficient resolution in one proceeding of common issues of law and fact"); *Litty v. Merrill Lynch & Co.*, No. 14 Civ. 0425, 2014 U.S. Dist. LEXIS 160447, at *18 (C.D. Cal. Aug. 4, 2014) (same). Collective actions also avoid "a multiplicity of duplicative suits" that would unnecessarily burden courts. *Woods v. Vector Mktg. Corp.*, No. 14 Civ. 0264, 2015 U.S. Dist. LEXIS 32370, at *5-6 (N.D. Cal. Mar. 16, 2015) (quoting *Hoffmann-La Roche*, 493 U.S. at 172).

### 1.  Collective Action Certification is a Two-Stage Process.

Collective action certification under the FLSA is a two-stage process. *See Reed v. Bridge Diagnostics, LLC,* No. 21 Civ. 01409, 2023 U.S. Dist. LEXIS 130595, at *8-9 (C.D. Cal. June 13, 2023) (the Ninth Circuit utilizes a two-stage process in FLSA collective actions); *Feaver v. Kaiser Found. Health Plan, Inc.*, No. 15 Civ. 00890, 2016 U.S. Dist. LEXIS 9778, at *10 (N.D. Cal. Jan. 27, 2016) (district courts in the Ninth Circuit have adopted a two-step

---

[27]    Sablowsky Decl. at ¶ 21; Johnson Decl. at ¶ 21; J. Brown Decl. at ¶ 21; M. Brown Decl. at ¶ 20; Vindheim Decl. at ¶ 20.

[28]    Sablowsky Decl. at ¶ 21; Johnson Decl. at ¶ 22; J. Brown Decl. at ¶ 21; M. Brown Decl. at ¶ 20; Vindheim Decl. at ¶ 21.

approach for determining whether putative FLSA class members are "similarly situated"); *see also Campbell*, 903 F.3d at 1109 (outlining same). During the first stage—which typically occurs early in litigation, the district court "determines whether the proposed class should be conditionally certified for the sole purpose of sending out notice of the proposed action to the potential class members." *Feaver*, 2016 U.S. Dist. LEXIS 9778, at *10.

For this first stage, "[t]he question is essentially whether there are potentially similarly-situated class members who would benefit from receiving notice at this stage of the pendency of this action as to all defendants." *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015); *see also Zaborowski v. MHN Gov't Servs., Inc.*, No. 12 Civ. 05109, 2013 U.S. Dist. LEXIS 59492, at *4 (N.D. Cal. Apr. 25, 2013) (conditional certification is based on the pleadings and affidavits submitted by the parties); *Campbell*, 903 F.3d at 1109 ("At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence."). Once a court finds that this standard is met, it conditionally certifies the case as a collective action and orders dissemination of notice to potential class members, allowing them an opportunity to affirmatively opt in by filing consent-to-join forms. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1043 (Mar. 22, 2016) ("the sole consequence of conditional certification . . . is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court[.]").

For the second stage, "[o]nce discovery is complete and the case is ready to be tried, the party opposing class certification may move to decertify the class." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). The court's determination of whether to decertify involves reviewing several factors, including "the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit." *Shaia*, 306 F.R.D. at 272. Because of its purpose and timing, attempts at decertification during this second stage can resemble a motion for partial summary judgment on the "similarly situated" question, and may

be combined with cross-motions for summary judgment. *Campbell*, 903 F.3d at 1109 (citations omitted).

Quite simply, this two-step approach has been endorsed by the Nineth Circuit and is applicable here.

### 2. The Standard for Conditional Certification is Considerably Less Stringent than in Rule 23 Class Certification.

Conditional certification under the FLSA differs greatly from class certification under Federal Rule of Civil Procedure 23. At the notice stage, "district courts simply evaluate whether there is some factual basis beyond the mere averments in their complaint for the class allegations." *Saravia*, 310 F.R.D. at 422 (internal quotation marks omitted); *see also Feaver*, 2016 U.S. Dist. LEXIS 9778, at *10 (conditional certification requires "little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy or plan" (internal quotation marks omitted)). The standards for making this modest factual showing "are considerably less stringent than those for Rule 23 classes." *Guilbaud*, 2014 U.S. Dist. LEXIS 141109, at *3; *Zaborowski*, 2013 U.S. Dist. LEXIS 59492, at *5 (same); *Coates v. Farmers Grp., Inc.*, No. 15 Civ. 01913, 2015 U.S. Dist. LEXIS 165817, at *19-20 (N.D. Cal. Dec. 9, 2015) ("[E]ven at the second stage, the requisite showing of similarity of claims under the FLSA is considerably less stringent than the requisite showing under Rule 23[.]" (internal quotation marks omitted)); *Moreno v. Cap. Bldg. Maint. & Cleaning Servs.*, No. 19 Civ. 07087, 2021 U.S. Dist. LEXIS 87268, at *57 (N.D. Cal. May 5, 2021) ("Because class members must opt-in, the standards for certifying a conditional FLSA class are considerably less stringent than those for Rule 23 classes." (quoting *Brewer v. Gen. Nutrition Corp.*, No. 11 Civ. 03587, 2013 U.S. Dist. LEXIS 2948, at *2 (N.D. Cal. Jan. 7, 2013)).

### 3. Certification during the First Stage Requires Only a Minimal Evidentiary Showing.

At the initial stage of conditional certification, the court's inquiry involves "a fairly lenient standard and typically results in conditional class certification." *Saravia*, 310 F.R.D. at

422; *Herrera v. EOS IT Mgmt. Sols., Inc.*, No. 20 Civ. 01093, 2020 U.S. Dist. LEXIS 235832, at *7-8 (N.D. Cal. Dec. 14, 2020) ("For conditional certification at the notice stage, the court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan") (internal quotations omitted); *Benedict v. Hewlett-Packard Company,* No. 13 Civ. 0119, 2014 U.S. Dist. LEXIS 18594, at *19 (N.D. Cal. Feb. 13, 2014) (to obtain conditional certification plaintiffs "need not conclusively establish that collective resolution is proper, because a defendant will be free to revisit this issue at the close of discovery"); *Guilbaud*, 2014 U.S. Dist. LEXIS 141109, at *4 (plaintiff's burden for conditional certification is "a light one"); *Campbell*, 903 F.3d at 1109 ("The level of consideration is 'lenient,' . . . sometimes articulated as requiring 'substantial allegations,' sometimes as turning on a 'reasonable basis,' but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings.") (internal citations omitted). "Given that a motion for conditional certification usually comes before much, if any, discovery, and is made in anticipation of a later more searching review, a movant bears a very light burden in substantiating its allegations at this stage." *Brown v. Citicorp Credit Servs.*, No. 12 Civ. 62, 2013 U.S. Dist. LEXIS 59616, at *11-12 (D. Idaho Apr. 24, 2013).

At the conditional certification stage, the court "may not resolve factual disputes or make credibility determinations" and does not decide substantive issues on the merits. *Little v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 608 n.2 (S.D.N.Y. Feb. 5, 2016) (internal quotation marks omitted); *see also Shaia*, 306 F.R.D. at 272 (the initial "notice stage" of class certification "is not the appropriate time for a court to evaluate the merits of plaintiffs' FLSA claims"); *Flores v. Velocity Express, Inc.*, No. 12 Civ. 05790, 2013 U.S. Dist. LEXIS 77821, at *21 (N.D. Cal. June 2, 2013) (the question for conditional certification is not whose evidence "is more believable, but simply whether plaintiffs have made an adequate threshold showing"). Courts routinely reject attempts by defendants to introduce evidence pertaining to the merits of plaintiffs' allegations at the notice stage. *See, e.g.*, *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2017) (declining to consider evidence set forth by

defendants in ruling on conditional certification because doing so would be resolving factual disputes that go to the merits of the claims, which is inappropriate at the conditional certification stage);*Carter v. XPO Last Mile, Inc*., No. 16 Civ. 01231, 2016 U.S. Dist. LEXIS 137176, at *14 n.5 (N.D. Cal. Oct. 3, 2016) ("courts in this district usually do not usually consider defendants' evidence in determining conditional certification"); *Wellens v. Daiichi Sankyo, Inc*., No. 13 Civ. 00581, 2014 U.S. Dist. LEXIS 70628, at *5 (N.D. Cal. May 22, 2014) (finding that considering counter evidence by defendants is not appropriate at the conditional certification stage).

Courts in this district regularly grant first-stage FLSA certification based on substantial allegations coupled with a small number of declarations or affidavits. *See, e.g.*, *Coates*, 2015 U.S. Dist. LEXIS 165817, at *24-25 ("a plaintiff need not submit a large number of declarations" to show class members are similarly situated, citing examples of three and five declarations being sufficient); *Flores*, 2013 U.S. Dist. LEXIS 77821, at *8 (declarations from two plaintiffs sufficient to grant conditional certification); *Villa v. United Site Servs. Of Cal., Inc.*, No. 12 Civ. 00318, 2012 U.S. Dist. LEXIS 162922, at *41 (N.D. Cal. Nov. 13, 2012) (declarations from three co-workers sufficient to grant conditional certification); *Gomez v. H & R Gunlund Ranches, Inc*., No. 10 Civ. 1163, 2010 U.S. Dist. LEXIS 137736, at *12 n.1 (E.D. Cal. Dec. 16, 2010) (declarations from three witnesses sufficient to grant conditional certification); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) (citing examples of two to four declarations justifying conditional certification). Because Plaintiffs' burden for conditional certification is not heavy, "[a] handful of declarations may suffice" to make the showing. *Harris*, 716 F. Supp. 2d at 838.

**4. Plaintiffs Satisfy the Lenient "Similarly Situated" Standard for Notice at this Early Stage of the Litigation.**

"Determining whether a collective action is appropriate is within the discretion of the district court." *Moreno*, 2021 U.S. Dist. LEXIS 87268, at *57 (quoting *Leuthold*, 224 F.R.D. at 466). While Plaintiffs bear the burden of showing that they are "similarly situated" for purposes of 29 U.S.C. § 216(b), it is a light one, because a finding for conditional certification

1  requires only that Plaintiffs make "substantial allegations that the putative class members were

2  subject to a single illegal policy, plan[,] or decision." *Id.* (citations omitted); *see also Alvarez*

3  *v. Farmers Ins. Exch.*, No. 14 Civ. 00574, 2014 U.S. Dist. LEXIS 133138, at *4-6 (N.D. Cal.

4  Sep. 19, 2014) (collecting cases regarding the leniency of the first-stage conditional

5  certification standard). A light burden is particularly appropriate here where no discovery has

6  taken place to date. *See Brown,* 2013 U.S. Dist. LEXIS 59616, at *11-12 (finding a light burden

7  is appropriate when no discovery has taken place).

8        Here, Plaintiffs put forth sufficient evidence to establish that they and the Proposed

9  Collective were victims of Defendants' common policy, plan, or decision to misclassify them

10  as exempt from overtime. In support of their motion, Plaintiffs submit five declarations from

11  BMs who worked in five different locations in five different states, which shows that they all:

12  (1) were classified as exempt BMs; (2) worked substantial overtime hours for which they were

13  not paid; and (3) primarily performed the same, non-exempt manual labor and customer service

14  job duties.[29] In addition, they collectively identify an additional 13 BMs who worked in at least

15  12 other branches in at least 7 other states who they believe similarly: (i) were classified as

16  exempt BMs; (ii) worked substantial overtime hours for which they were not paid; (iii)

17  primarily performed the same, non-exempt manual labor and customer service job duties; (iv)

18  and would likely join this lawsuit if the Court permitted Plaintiffs to send out notice.[30] In

19  addition, Plaintiffs submit a plethora of publicly available statements made by Defendants in

20  which they admit to the common employment practice. *See generally,* Ex. 6 (Composite of

21  Website Pages).

22        The evidence provided to date is "sufficient for plaintiffs to meet their burden of

23  making substantial allegations that proposed class members were subject to an illegal policy

24  of not paying overtime compensation" to BMs. *Ash v. Bayside Sols., Inc*., No. 14 Civ. 02183,

25  _____

26  [29]    Sablowsky Decl. at ¶¶ 3, 9-15; Johnson Decl. at ¶¶ 3, 10-15; J. Brown Decl. at ¶¶ 3, 9-

27  15; M. Brown Decl. at ¶¶ 3, 8-14; Vindheim Decl. at ¶¶ 3, 8-14.

28  [30]    Sablowsky Decl. at ¶¶ 22-26; Johnson Decl. at ¶ 23-26; J. Brown Decl. at ¶¶ 22-26; M. Brown Decl. at ¶¶ 21-25; Vindheim Decl. at ¶¶ 22-26.

2015 U.S. Dist. LEXIS 11323, at *3, *12-13 (N.D. Cal. Jan. 30, 2015) (four declarations asserting that plaintiffs worked in excess of 40 hours a week and were not paid overtime, in conjunction with statement of the number of affected employees, sufficed to carry plaintiffs' burden of making substantial allegations) (internal quotations omitted).

In light of the above, Plaintiffs bring this motion quickly to minimize delay in members of the Proposed Collective learning of the existence of the lawsuit so that they can preserve evidence (as Defendants already have had the opportunity to do) and decide whether to opt in. "Because of the statute of limitations, eligible workers who do not join this litigation or choose to file their own separate claims, may lose their rights to sue." *Bejar v. SOS Int'l LLC*, No. 16 Civ. 09000, 2018 U.S. Dist. LEXIS 228775, at *32 (C.D. Cal. Mar. 13, 2018). Once the collective is established at the end of the opt-in period, the parties can proceed to more detailed discovery to probe whether the case should proceed to trial on a collective basis or be decertified for a series of individual trials.

**5.   The Court Should Authorize Notice to BMs Who Worked at Any Auto-Chlor System Branch, Regardless of Whether Defendants Claim Auto-Chlor System Did Not Directly Employ BMs.**

**i.    The Issue of Whether Auto-Chlor System, LLC, is a "Joint Employer" is a Merits-Related Issue Reserved for the Second Stage.**

At this conditional certification stage, the Court should not consider Defendants' argument that Auto-Chlor System did not employ Plaintiffs and the Proposed Collective. "In instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Manning v. Goldbelt Falcon, LLC*, No. 08 Civ. 3427, 2010 U.S. Dist. LEXIS 104029, at *8-9 (D.N.J. Sep. 29, 2010); *see also Kerin v. Toms King*, No. 19 Civ. 01470, 2021 U.S. Dist. LEXIS 58933, at *24-25 (W.D. Pa. Mar. 29, 2021) ("Further, Defendants' joint employer argument . . . is also more appropriately addressed at the next stage of the two-step certification process.") (citations omitted); *Bowser v. Empyrean Servs.*, LLC, 324 F.R.D. 346, 352-53 (W.D. Pa. 2018) ("That potential opt-in plaintiffs held different jobs, in different departments, at different locations

does not preclude conditional certification because all were subject to the same allegedly unlawful policy. . . . Even, 'where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination.'" (internal citations omitted)); *Kucher v. Domino's Pizza, Inc.*, No. 16 Civ. 2492, 2017 U.S. Dist. LEXIS 222812, at *33-35 (S.D.N.Y. Feb. 13, 2017) ("although [the plaintiffs] did submit some evidence that Domino's is a joint employer, even if they had not, the Court would still permit [the plaintiffs] to send notice to the purported collective."). "[B]ecause courts focus on pay provisions and job requirements and not on whether separate employers are joint employers during stage one, there is precedent for conditionally certifying an FLSA class that consists of employees of related employers." *Manning*, 2010 U.S. Dist. LEXIS 104029, at *9 (internal quotations omitted). This is because "[t]he court can determine at a later time whether defendants are joint employers." *Aguilar v. Complete Landsculpture, Inc.*, No. 04 Civ. 0776, 2004 U.S. Dist. LEXIS 20265, at *10 (N.D. Tex. Oct. 7, 2004).

Thus, to the extent Defendants contend in opposition that Auto-Chlor System did not employ Plaintiffs or the Proposed Collective, the Court should not entertain such an argument. Plaintiffs move for collective certification before any discovery has taken place, so "[i]t is too early in this litigation to make a final determination on whether [defendants] acted as joint employers." *Roberts v. Sidwell Air Freight Inc.*, No. 21 Civ. 5912, 2022 U.S. Dist. LEXIS 207301, at *18 (W.D. Wash. Nov. 15, 2022). As such, the Court should authorize notice to entire Proposed Collective—meaning BMs who worked at any Auto-Chlor System branch nationwide.

### ii. Even if the Court Considers the Issue of Whether Auto-Chlor System is a "Joint Employer" at this Stage, Plaintiffs Sufficiently Show Auto-Chlor System is an Employer.

Although Plaintiffs maintain that any consideration of whether Auto-Chlor System did in fact jointly employ Plaintiffs and the Proposed Collective should be deferred to the second stage of this case, Plaintiffs nevertheless establish sufficient evidence that Auto-Chlor System, has, in fact, employed them and the Proposed Collective. While the FLSA does not specifically

address the joint employer doctrine, the Department of Labor's regulations indicate that "joint employment will generally be considered to exist when 1) the employers are not 'completely disassociated' with respect to the employment of the individuals and 2) where one employer is controlled by another or the employers are under common control." *Id*. at 989 (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (internal citations omitted)). The issue of a "joint employer" status under the FLSA is a "question of law." *Monroe v. Hayward Unified Sch. Dist.*, No. 22 Civ. 04489, 2023 U.S. Dist. LEXIS 41279, at \*7 (N.D. Cal. Mar. 12, 2023) (quoting *Aguilar v. Rumi Constr.*, No. 07 Civ. 0272, 2007 U.S. Dist. LEXIS 113703, at \*3 (N.D. Cal. June 4, 2007)).

In determining whether a particular entity is liable as a joint employer, courts evaluate "the total employment situation and the economic realities of the work relationship." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). In doing so, courts in the Ninth Circuit consider four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* While these factors are used, "they are not etched in stone and will not be blindly applied. The ultimate determination must be based 'upon the circumstances of the whole activity.'" *Id.* (quoting *Rutherford*, 331 U.S. at 730).

All that is required at the conditional certification stage is for Plaintiffs to make "substantial allegations." *Campbell*, 903 F.3d at 1109; *see also Brown*, 2013 U.S. Dist. LEXIS 59616, at \*11-12 ("a movant bears a very light burden in substantiating its allegations at this stage"). This Court already evaluated the sufficiency of Plaintiffs' joint employer allegations in its Order on [Defendants'] Motion to Dismiss because it held that Plaintiffs sufficiently alleged that "Auto-Chlor System, LLC, and the subsidiaries operated under 'common control' and were 'not completely disassociated' with respect to plaintiffs' employment, they were plausibly plaintiffs' 'joint employers,' and thus can be held liable under the FLSA if they didn't pay plaintiffs for their overtime work." Dkt. No. 30 at 3. In further support of these allegations, Plaintiffs set forth a myriad of evidence in support of their contention that Auto-Chlor System

is a joint employer, including (i) a prior admission by Auto-Chlor System that it is a parent company of Auto-Chlor System of NYC and Auto-Chlor System of the Mid South; (ii) publications on the Auto-Chlor System website reflecting a common enterprise; and (iii) Plaintiffs' five detailed declarations describing the nature of Auto-Chlor System's control over their employment and how all Defendants operated as a common enterprise. *See supra* Statement of Facts § D.

Thus, to the extent Plaintiffs had a burden of proof at this stage, they sufficiently show that Defendants should be considered one enterprise for the purposes of conditional certification. *See Nadreau v. Lush Cosmetics, Inc.*, No. 10 Civ. 298, 2011 U.S. Dist. LEXIS 160487, at *9-10 (M.D. Fla. Jan. 28, 2011) (finding that because the plaintiffs alleged they "all had similar email addresses, had identical job descriptions, attended the same meetings, and 'all consider [themselves] to be employed by Lush'", that the defendants' website made no distinction between the two named entities, and because the plaintiffs had provided affidavits indicating that a similar policy or approach to compensation and hours was used at both named entities, conditional certification was "especially appropriate."). Therefore, the Court should authorize notice to entire Proposed Collective —meaning BMs who worked at any Auto-Chlor System branch nationwide.

**B.  Plaintiffs' Proposed Notice Is the Best Notice Practicable.**

Upon satisfaction of the FLSA conditional certification standard, a plaintiff should disseminate notice to inform potential opt-ins about the action and their right to participate. *See Hoffmann-La Roche*, 493 U.S. at 169-71. Court-supervised notice ensures that the notification procedure will be accomplished in an efficient, accurate manner. *See id.* at 170-71; *Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 325 (N.D. Cal. 2013) (employees must receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate") (internal quotation marks omitted).

Court-authorized notice "serve[s] the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Flores*, 2013 U.S. Dist. LEXIS 77821, at *13 (quoting *Hoffmann-La Roche*, 493 U.S. at 172). Thus, when

facilitating the distribution of notice, "courts must be scrupulous to respect judicial neutrality," *Hoffman-La Roche*, 493 U.S. at 174, while advancing "the legitimate goal of avoiding a multiplicity of duplicative suits." *Id*. at 172. "The goal of avoiding multiplicity of duplicative suits is fostered by providing as much notice of the action as is practicable." *Arrendondo v. Delano Farms Co.*, No. 09 Civ. 1247, 2011 U.S. Dist. LEXIS 44134, at *55 (E.D. Cal. Apr. 19, 2011); *see also Woods v. New York Life Ins. Co.*, 686 F.2d 578, 581 (7th Cir. 1982) ("[I]t is unlikely that Congress, having created a procedure for representative actions, would have wanted to prevent the class representative from notifying other members of the class that they had a champion[.]").

Moreover, broad dissemination of notice furthers Congress's primary goal in enacting the FLSA: to "protect *all* covered workers from substandard wages." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (emphasis added); *see also Zaborowski*, 2013 U.S. Dist. LEXIS 59492, at *7 (prompt notice under FLSA advances the congressional purpose of protecting all covered workers). Such protection includes protecting workers from losing their claims to the statute of limitations when they do not know of their rights:

> Prompt court action is needed because potential opt-in plaintiffs' claims are in risk of being extinguished by the running of the statute of limitations. Unlike Rule 23 class actions, the statute of limitations for those who have not filed Consent Forms is not tolled by the commencement of this action. As a result, the statute of limitations continues to run on each individual's claim until they file a Consent Form with this court. Thus, every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued erosion of these claims.

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 371 (S.D.N.Y. 2007) (citations omitted); *see also Zaborowski*, 2013 U.S. Dist. LEXIS 59492, at *7 (a court "will promote justice and efficiency by notifying potential class members of [a FLSA collective] action early so that documents and memories can be more carefully preserved").

### 1.   Plaintiffs' Notice Clearly Communicates BMs' Rights and Options.

Plaintiffs propose a neutral and straightforward form of Notice that will inform potential Opt-Ins of their statutory opt-in rights. *See* [Proposed] Order Granting Plaintiffs' Motion for Conditional FLSA Collective Action Certification, Ex. A ("Notice"). The proposed

Notice explains the nature of the action, briefly summarizes Plaintiffs' allegations, and states Defendants' denial of liability. It makes clear that the Court has not adjudicated the merits of the dispute. The Notice also identifies a website at which individuals considering their options can obtain further information and, if they wish, opt in. The Notice provides Plaintiffs' counsel's contact information, so that potential Opt-Ins can speak with the attorneys whom they would be designating to represent them should they choose to opt in.

Furthermore, the Notice explains the procedural posture of the case, and answers commonly asked questions. It also describes how individuals can opt in (by mail, email, fax, or online submission). The Notice also warns that Opt-Ins will be bound by the resulting judgment, whether favorable or unfavorable. The Notice attaches a Consent to Join form that would be used to allow the Proposed Collective members to opt in to the lawsuit.

### 2. Plaintiffs' Notice Plan Ensures the Notice Effectively Reaches BMs.

Plaintiffs propose disseminating the Notice by mail, email, and text message, with reminder notices at the end of the opt-in period, so that Plaintiffs can effectively inform potential Opt-Ins of their rights. Plaintiffs also propose the creation of a website that will permit potential Opt-Ins to electronically submit a consent form. District courts in the Ninth Circuit and elsewhere routinely approve notice by email, and even text message in recent years. *See, e.g.*, *Dominguez v. Better Mortg. Corp.*, No. 20 Civ. 01784, 2022 U.S. Dist. LEXIS 198305, at *20 (C.D. Cal. Oct. 24, 2022); *Dudley v. TrueCoverage LLC*, No. 18 Civ. 3760, 2018 U.S. Dist. LEXIS 225618, at *14 (C.D. Cal. Sep. 28, 2018) (collecting cases).

Here, disseminating the Notice by mail, email, and text message will help ensure that the Court-ordered Notice will be effective in reaching prospective Opt-Ins and informing them of their rights. Simply put, mailed notice inevitably fails to reach every single class member. Corporate address databases sometimes contain errors. Working people, deluged with mail and busy with the concerns of daily life, may not recognize the Court-issued Notice in a pile of junk mail and bills. It is also inevitable that some recipients will misunderstand the Notice's significance or requirements. In addition, individuals no longer working for Defendants may

1   have moved, perhaps more than once, since leaving Defendants, and they may not receive

2   forwarded Notice by mail.

3       Disseminating notice to potential Opt-Ins by mail, email, and text message can help

4   solve these problems. This "belt-and-suspenders" approach to effectuating Notice promotes

5   communication of the Court's message to potential Opt-Ins. It makes the Notice more effective

6   by increasing the odds that potential Opt-Ins will see it.

7       In addition, consistent with notice best practices, Plaintiffs plan to make a website

8   available, through which potential collective members can learn about the case, read the

9   Notice, and electronically submit a consent form, if they so choose. The use of such an

10  interactive website is increasingly common, including in this District. *See Woods*, 2015 U.S.

11  Dist. LEXIS 32370, at *10, 21 (approving request for online submission of consent forms); *see*

12  *also Dominguez*, 2022 U.S. Dist. LEXIS 198305, at *22 (finding that "electronic signatures

13  for important documents—such as contracts, tax documents, and court filings—are now

14  standard, especially in recent years and during the COVID-19 pandemic"); *Randall v.*

15  *Integrated Commun. Serv.*, No. 20 Civ. 5438, 2021 U.S. Dist. LEXIS 107424, at *20 (W.D.

16  Wash. June 8, 2021) ("Nothing in [29 U.S.C. § 216(b)] requires that plaintiffs sign[] a consent

17  form by hand and placing it into a self-addressed, stamped envelope, as Comcast

18  suggests" (internal quotation marks omitted)).

19      Furthermore, to facilitate Plaintiffs' efforts to reach Proposed Collective members,

20  Plaintiffs request production of each potential Proposed Collective member's last known

21  address, non-work telephone number, email address, and dates and location(s) of employment.

22  Courts routinely require production of such information. *See, e.g.*, *Dudley*, 2018 U.S. Dist.

23  LEXIS 225618, at *15 (ordering that the defendants provide a list identifying each potential

24  opt-in plaintiff by full name and including for each his or her last known address, telephone

25  number, email address, and dates and location(s) of employment); *Otey v. CrowdFlower, Inc.*,

26  No. 12 Civ. 05524, 2013 U.S. Dist. LEXIS 122007, at *17 (N.D. Cal. Aug. 27, 2013)

27  (compelling production of IP addresses and any known email addresses, mailing addresses,

28  and phone numbers for the putative class members); *Hoffmann-La Roche*, 493 U.S. at 170

(holding that district courts have the authority to compel the production of contact information of employees for purposes of facilitating notice in FLSA collective actions).

Lastly, Plaintiffs propose sending reminder notices to the Proposed Collective members toward the end of the opt-in period. Courts "commonly approve such reminders." *See, e.g.*, *Dominguez*, 2022 U.S. Dist. LEXIS 198305, at *21 ("reminder notices to putative collective members are common, including in cases where the court has approved notice by more than one means"); *Dudley*, 2018 U.S. Dist. LEXIS 225618, at *14 (collecting cases for proposition that reminder notices to potential opt-in plaintiffs also are common). In Plaintiffs' counsel's experience, potential opt-ins sometimes intend to opt in but neglect to do so because of the distractions of work and everyday life, and a reminder regarding the deadline can help them act on their intentions.

For similar reasons, Plaintiffs propose that BMs have 90 days during which to determine whether to opt in. This is a notice period commonly ordered by courts in this circuit. *See, e.g.*, *Dominguez*, 2022 U.S. Dist. LEXIS 198305, at *19 ("[C]ourts in this Circuit regularly grant 90-day opt-in periods for FLSA collective actions."); *Phillips v. Cty. of Riverside*, No. 19 Civ. 1231, 2020 U.S. Dist. LEXIS 259345, at *6 (C.D. Cal. Mar. 2, 2020) ("As both parties acknowledge, courts in the Ninth Circuit routinely approve 60- to 90-day periods."); *Dudley*, 2018 U.S. Dist. LEXIS 225618, at *14 (collecting cases). A 90-day opt-in period allows individuals to research the case, interview Plaintiffs' counsel, consult with their families, and weigh this important decision.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that this Court: (1) conditionally certify the proposed FLSA Collective; (2) order Defendants to produce to Plaintiffs' counsel a class list containing collective members' full names, addresses, non-work telephone numbers, email addresses, and the dates and branch locations where they worked; (3) direct the dissemination of notice of the pendency of the action by mail, email, and text message using the proposed Notice; (4) permit potential Collective Members to file Consent to Join Forms, by mail, fax, e-mail, or website submission, until 90 days after Plaintiffs'

1  mailing of notice to the class; and (5) permit the dissemination of a reminder postcard by mail,

2  email, and text message.

3

4  Dated: August 3, 2023.                    **Pardell, Kruzyk & Giribaldo, PLLC**

5                                            By:___/s/Logan A. Pardell___

6                                            Logan A. Pardell* (admitted *pro hac vice*)
                                             433 Plaza Real, Suite 275
7                                            Boca Raton, FL 33432
                                             Telephone     (561) 726-8444
8                                            Facsimile      (877) 453-8003
                                             lpardell@pkglegal.com
9

10                                           **Wynne Law Firm**
                                             Edward J. Wynne
11                                           George Nemiroff
                                             80 E. Sir Francis Drake Blvd., Suite 3G
12                                           Larkspur, CA 94939
                                             Telephone     (415) 461-6400
13                                           Facsimile      (415) 461-3900
                                             ewynne@wynnelawfirm.com
14                                           gnemiroff@wynnelawfirm.com
15

16

17                                           Counsel for Plaintiffs and the Putative Collectives

18

19

20

21

22

23

24

25

26

27

28