UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK SABLOWSKY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTO-CHLOR SYSTEM, LLC, et al.,<br><br>Defendants. | Case No. 23-cv-02555-AGT<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL FLSA COLLECTIVE ACTION CERTIFICATION**<br><br>Re: Dkt. No. 35 |

Plaintiffs Mark Sablowsky and Sumner Johnson bring this action under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, against Auto-Chlor System, LLC, Auto-Chlor System of New York City, Inc. and Auto-Chlor System of the Mid South, LLC (collectively, "Defendants"). Plaintiffs now move for conditional FLSA certification to provide notice to putative collective members ("collective notice"). Dkt. 35. For the reasons discussed below, the Court grants Plaintiffs' motion for conditional certification and orders the parties to meet and confer and submit a joint proposed collective notice.

**I.     BACKGROUND**

Plaintiffs filed this action on behalf of themselves and putative collective members on May 24, 2023, alleging that Defendants violated the FLSA by failing to pay overtime wages. *See* Dkt. 1, Compl. ¶¶ 1–3. Sablowsky alleges that he was employed as a branch manager by Auto-Chlor System, LLC and Auto-Chlor System of New York City, Inc. from November 2020 to November 2021, at a branch location in Pennsylvania. *Id.* ¶ 5. Johnson alleges that he was employed as a branch manager by Auto-Chlor System, LLC and Auto-Chlor System of the Mid South, LLC from

approximately 2018 to February 2021, at a branch location in Iowa. *Id.* ¶ 10. Both Sablowsky and Johnson allege that they and other similarly situated branch managers "regularly worked more than 40 hours in a workweek" but were not compensated for the overtime hours. *Id.* ¶¶ 65–66.

On June 15, 2023, Defendants filed a motion to dismiss Plaintiffs' complaint (Dkt. 9), which the Court denied on July 26, 2023 (Dkt. 30). On August 3, 2023, Plaintiffs filed the instant motion for conditional FLSA collective action certification and issuance of a notice to the potential opt-in plaintiffs. Dkt. 35. The Court held a hearing on September 22, 2023. As directed by the Court, the parties submitted supplemental briefing (Dkts. 52 & 53), after which the matter was deemed submitted.

## II.     LEGAL STANDARD

Congress enacted the FLSA for the purpose of protecting the "health, efficiency, and general well-being of workers" by regulating labor conditions. 29 U.S.C. § 202. These protections include unpaid overtime compensation. *Id.* § 207. An action under the FLSA may be brought "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* § 216(b). Under the FLSA, an employee who wishes to exercise the option to join the action as a plaintiff (an "opt-in" plaintiff) must consent in writing and file that written consent with the court. *Id.* As summarized by the Ninth Circuit, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt into the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b)).

The Ninth Circuit has outlined a two-step approach to FLSA collective action certification. At the first step, which is usually "at or around the pleading stage," the plaintiffs may "move for preliminary certification." *Id.* at 1109. At the second step, which comes "at or after the close of relevant discovery," the "employer can move for 'decertification' of the collective action for

failure to satisfy the 'similarly situated' requirement."[1]  *Id*. (citations omitted).

Preliminary certification (also known as "conditional" certification) "refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)."  *Id*. (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)).  While the plaintiffs bear the burden, the "level of consideration is lenient—sometimes articulated as requiring substantial allegations, sometimes as turning on a reasonable basis, but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings."  *Id*. (cleaned up).  At the conditional certification stage, "the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence."  *Id*.

## III.   DISCUSSION

Plaintiffs seek conditional certification of "a group of exempt-classified Branch Managers, and employees in similar positions with different job titles, [] who worked at any of Defendants' [] branch locations nationwide at any time from May 25, 2020, (i.e., three years prior to the filing of the Complaint []) through the present."  Dkt. 35 at 6.  Plaintiffs contend that Defendants are "joint employers," and accordingly request that the collective notice be provided to branch managers who worked at any branch location.  *Id.* at 19.  Defendants counter that they are not joint employers because Auto-Chlor System, LLC "operates entirely independently" of the other defendants.  Dkt. 40 at 4.  Defendants also contend that Plaintiffs have failed to show they are "similarly situated" to other branch managers in the proposed collective.  *Id.* at 13–15.

---

[1] The second step, or decertification stage, is not at issue here.  The Court will not address decertification here other than to note that, at that point, the "similarly situated" requirement is analyzed under a stricter standard.  *See Campbell*, 903 F.3d at 1109.

3

The Court first considers whether the branch managers are sufficiently alleged to be similarly situated, and then examines whether Auto-Chlor System, LLC is sufficiently alleged to be a joint employer. Lastly, the Court considers the parties' arguments regarding the form of the collective notice.

### A.   Branch Managers are Sufficiently Alleged to be Similarly Situated

The parties dispute whether branch managers, and employees in similar positions at the branch locations, are similarly situated. While the FLSA does not define "similarly situated," the Ninth Circuit has explained that "plaintiffs must be alike with regard to some *material* aspect of their litigation." *Campbell*, 903 F.3d at 1114. "If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment." *Id*. (emphasis omitted).

Here, Plaintiffs argue that Defendants misclassified branch managers as exempt employees and therefore wrongfully denied them overtime pay for hours worked in excess of forty hours per week. A claim for failure to pay overtime based on employee misclassification usually requires allegations in addition to the misclassification itself, such as similarities in work duties. *See Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629–30 (E.D. Cal. 2009) (noting that "[c]ases engaging in notice stage analysis on misclassification claims[] have required further allegation or evidence indicating that prospective class members share similar job duties" and citing cases). Plaintiffs have submitted five declarations, one from each of the two plaintiffs and three from potential opt-in plaintiffs, to demonstrate that branch managers are similarly situated.[2] These declarations identify a total of thirteen additional branch managers who all, allegedly, were

---

[2] Plaintiffs cite several cases from courts in this Circuit to support the proposition that even a small number of declarations (half a dozen or less) may be sufficient at this stage. Dkt. 35 at 17; *see, e.g.*, *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 838 (N.D. Cal. 2010) ("A handful of declarations may suffice."). The Court finds that the five declarations submitted here are sufficient.

4

classified as exempt, not paid for overtime hours, and performed similar job duties. *See* Dkt. 35-1, Sablowsky Decl. ¶¶ 3, 9–15, 22–26; Dkt. 35-4, Johnson Decl. ¶¶ 3, 10–15, 23–26; Dkt. 35-2, J. Brown Decl. ¶¶ 3, 9–15, 22–26; Dkt. 35-3, Vindheim Decl. ¶¶ 3, 8–14, 22–26; Dkt. 35-5, M. Brown Decl. ¶¶ 3, 8–14, 21–25. The duties of the branch managers include non-exempt work such as "servicing, installing, and/or rebuilding dishwashers; visiting clients to collect payments and drop off dishwasher chemicals; counting inventory; and loading and unloading trucks." Dkt. 35 at 8 (quoting Sablowsky Decl. ¶ 10; Johnson Decl. ¶ 11; J. Brown Decl. ¶ 10; Vindheim Decl. ¶ 9; M. Brown Decl. ¶ 9). The declarants also aver that either a regional manager or a regional vice president expected that branch managers work in excess of forty hours or otherwise work in accordance with a schedule that corresponded to over forty hours. *See* Sablowsky Decl. ¶¶ 4–9; Johnson Decl. ¶¶ 4–10; J. Brown Decl. ¶¶ 4–9; Vindheim Decl. ¶¶ 4–8; M. Brown Decl. ¶¶ 4–8.

Defendants respond that the job duties described in the declarations vary among branch managers at branches of varying sizes, and consequently, the branch managers are not similarly situated. *See* Dkt. 40 at 8. At the conditional certification stage, the inquiry is whether Plaintiffs' allegations, supported by the declarations, are sufficient. The Court finds that they are. The members of the proposed collective are alleged to have suffered the same harm (nonpayment of overtime wages), for the same reasons (overtime work under exempt status), and they will seek the same remedies at least in part (some measure of unpaid wages). *See* Compl. ¶¶ 57, 66, 87. Thus, their "factual or legal similarities are material to the resolution of their cases." *Campbell*, 903 F.3d at 1114. The Court finds that Plaintiffs have made the requisite showing at this stage that Plaintiffs and potential opt-in plaintiffs are similarly situated.[3]

---

[3] Defendants request a continuance to "allow limited discovery on the similarly situated issue," including deposing the two named plaintiffs. Dkt. 40 at 15. Defendants have not persuaded the Court that such discovery is necessary at this stage and therefore Defendants' request is denied.

### B. Auto-Chlor System, LLC is Sufficiently Alleged to be a Joint Employer

Plaintiffs allege Defendants are all employers under the FLSA. In some circumstances where an employee works for more than one employer, the employers may each be liable as joint employers for the failure to pay overtime wages under the FLSA. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 916–17 (9th Cir. 2003). While Plaintiffs contend that the joint employer issue is a "merits-related issue" and should be reserved for a later stage, they also argue in the alternative that, even if the joint-employer issue is considered at this time, they have alleged facts sufficient to demonstrate that Defendants are joint-employers. Dkt. 35 at 19–21. Defendants, in turn, contend that Auto-Chlor System, LLC is not a joint employer because Plaintiffs worked for independent branches.[4] Dkt. 40 at 4.

As an initial matter, courts have typically recognized that the merits of the joint employer issue are to be resolved at the decertification stage (i.e., during or after discovery, or at summary judgment), but at the conditional certification stage (i.e., at or around the pleading stage), plaintiffs need only allege facts sufficient to satisfy the more lenient standard. *See, e.g.*, *Marino v. CACafe, Inc.*, 2017 WL 5713390, at *4 (N.D. Cal. Nov. 9, 2017) (finding evidence that defendants were joint employers at the "early stage with its low threshold" to be sufficient, "[r]egardless of the ultimate merits of the action"). Accordingly, the Court's analysis at this stage is limited to whether Plaintiffs have sufficiently alleged that Auto-Chlor System, LLC is a joint employer under the lenient standard.

In denying Defendants' motion to dismiss, the Court held that Plaintiffs have sufficiently alleged a joint employer relationship. *See* Dkt. 30 at 2–3 (citing *Chao*, 346 F.3d at 917–18). And

---

[4] Although the parties' briefing includes the phrase "common enterprise," Defendants do not appear to dispute that the FLSA applies to plaintiffs. *See Chao*, 346 F.3d at 917 (noting that enterprise status is relevant to FLSA coverage, while joint employer status is relevant to liability, although the factual considerations may be similar).

because the Court engaged in a similar analysis on the motion to dismiss as it does at the conditional certification stage, the Court's ruling on the motion for conditional certification will mirror the Court's previous holding that Defendants "were plausibly plaintiffs' 'joint employers,' And thus can be held liable under the FLSA if they didn't pay plaintiffs for their overtime work." *Id.* at 3 (citing *Chao*, 346 F.3d at 918).

The parties also refer to the "economic reality" test in arguing the joint employer issue, and the Court reaches the same result by applying that test at this stage.[5] *See Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1469–70 (9th Cir. 1983). The "economic reality" test, while "not a mechanical determination," may consider the following factors as "a useful framework": "whether the employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 1470 (citation omitted). Applying the above factors, Plaintiffs have shown that Defendants have met the joint employer requirement under the "economic reality" test. For example, Plaintiffs assert that Auto-Chlor System, LLC "is a parent company of Auto-Chlor System of NYC and Auto-Chlor System of the Mid South" and it "exerts significant control over the employment of Plaintiffs and the Proposed Collective." Dkt. 35 at 12, 22. Moreover, Plaintiffs' declarants state that their business cards, email address domain names (@autochlor.com), and vehicle logos were the same across the country. *See* Sablowsky Decl. ¶¶ 18, 20; Johnson Decl. ¶¶ 18, 20; J. Brown Decl. ¶¶ 18, 20; Vindheim Decl. ¶¶ 17, 19; M. Brown Decl. ¶¶ 17, 19. The declarants also each attest that: (i) their

---

[5] Depending on the type of relationship of the prospective joint employers (e.g., horizontal or vertical), the Ninth Circuit applies one of two tests. *See Chao*, 346 F.3d at 917. In ruling on the motion to dismiss, the Court applied the test for a horizontal relationship set forth in *Chao*. *Id.* The "economic reality" test is applicable to vertical relationships. *Id.* Here, at the first stage, the Court need not decide whether the defendants are engaged in a horizontal or vertical joint employer relationship, or which joint employer test applies, in order to rule on the pending certification motion.

"offer letter reflected 'Auto-Chlor System'"; (ii) "[a]ll communications related to human resources ran through Auto-Chlor System LLC's main office"; (iii) Auto-Chlor System, LLC's human resources department was "involved in hiring" and "ultimately makes the termination decisions"; (iv) "Auto-Chlor paid all of its [branch managers] the same way"; and (v) the "employee handbook applicable to all Auto-Chlor branches throughout the country" was "created at Auto-Chlor System, LLC's corporate office in Mountain View, California" and "includes policies and procedures that control the way all employees at Auto-Chlor branches across the country are to perform their jobs." *See* Sablowsky Decl. ¶¶ 18–19, 21–22; Johnson Decl. ¶¶ 18–19, 21, 23; J. Brown Decl. ¶¶ 18–19, 21–22; Vindheim Decl. ¶¶ 17–18, 20, 22; M. Brown Decl. ¶¶ 17–18, 20–21. At this stage in the litigation, Plaintiffs' allegations and supporting declarations are more than sufficient to support conditional certification based on Auto-Chlor System, LLC's status as a joint employer. Again, during or after discovery, Defendants may challenge their characterization as joint employers.

### C. Notice to Potential Opt-In Plaintiffs

The parties disagree about several aspects of the collective notice to be provided to putative members of the collective action. These aspects include the dates of employment indicated on the collective notice and the opt-in period for putative plaintiffs to provide written consent.

Plaintiffs' proposed collective notice includes a reference to May 24, 2020, which is three years prior to the filing date of the complaint, May 24, 2023. *See* Dkt. 35-9 at 1. Defendants propose including the language "within three years of your signing a consent" to more closely track the FLSA statute. *See* Dkt. 52 at 3. The statute of limitations under the FLSA is two years for unpaid wage claims and three years for willful violations, subject to tolling, running from the date of consent for each individual claimant. *See* 29 U.S.C. §§ 255(a), 256; *Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir. 1982) (discussing tolling). The parties agree on this point, but they disagree on which date should be printed on the collective notice (i.e., the "anchor date").

Plaintiffs want the earlier date, May 24, 2020, resulting in a more inclusive collective notice, based in part on the ability to challenge timeliness at a later stage. Dkt. 53 at 2. Plaintiffs rely on several cases where courts reference the three-year notice period based on the filing date of the complaint to provide broader notice. *See, e.g.*, *Saleh v. Valbin Corp.*, 297 F. Supp. 3d 1025, 1036 (N.D. Cal. 2017); *Vega v. All My Sons Bus. Dev. LLC*, 2022 WL 684380, at *4 (D. Ariz. Mar. 8, 2022). Defendants on the other hand present no authority that requires using the shorter time period. The Court therefore agrees with Plaintiffs and finds no reason to shorten the notice period at this time because the timeliness of opt-in can be challenged at a later stage.

Plaintiffs also propose a ninety-day opt-in period (Dkt. 35 at 26), while Defendants propose seventy-five days (Dkt. 40-7 at 2). Both proposals are reasonable in view of decisions by other courts in this Circuit. *See Dominguez v. Better Mortg. Corp.*, 2022 WL 17216831, at *7 (C.D. Cal. Oct. 24, 2022) (recognizing "courts in this Circuit regularly grant 90-day opt-in periods for FLSA collective actions"); *Sanchez v. Sephora USA, Inc.*, 2012 WL 2945753, at *6 (N.D. Cal. July 18, 2012) (collecting cases and observing that opt-in periods of "sixty to ninety days appear to have become the presumptive standard in this District"); *Williams v. U.S. Bank Nat'l Ass'n*, 290 F.R.D. 600, 614 n.33 (E.D. Cal. 2013) (collecting cases with approved opt-in periods of 60 to 180 days). Because Plaintiffs' proposal of a ninety-day opt-in period is reasonable and Defendants provided no persuasive reason or authority to shorten the period, the Court agrees with Plaintiffs on the opt-in period.

The parties have each submitted proposed or exemplar collective notices as exhibits to their respective filings at Dkts. 35 and 40. The Court orders the parties to meet and confer, and to submit a joint proposed collective notice consistent with the discussion above.

### IV.   CONCLUSION

For the above reasons, Plaintiffs' motion for conditional certification of collective action

is granted. The parties are ordered to meet and confer and jointly submit a proposed collective notice by November 15, 2023.

**IT IS SO ORDERED.**

Dated: October 31, 2023

_____
Alex G. Tse
United States Magistrate Judge